**Marguerite HICKS, Plaintiff–Appellant,**

v.

**The GATES RUBBER COMPANY,
Defendant–Appellee.**

No. 89–1373.

United States Court of Appeals,
Tenth Circuit.

March 22, 1991.

Elisa J. Moran (John Mosby with her on the briefs), Denver, Colo., for plaintiff-appellant.

David R. Gorsuch of Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, Colo., for defendant-appellee.

Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

This case is a paradigm of one of the central problems of litigation today—the problem being the length of time it takes for a lawsuit to resolve once it commences. The events giving rise to this litigation largely occurred more than a decade ago, and the initial complaint was filed in October, 1981. Since the filing of the complaint under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, there has been one trial, an appeal and remand, and further proceedings in the district court. The

matter is now before us again after the district court's latest judgment for the Defendant.

## I.

Marguerite Hicks (hereinafter "Plaintiff" or "Hicks") was hired by Gates Rubber Company (hereinafter "Gates") in July 1980 as a security guard. When she was hired Hicks was the only black woman in the security force, and one of only two black guards. The factual details of Hicks's employment with Gates are thoroughly told in the published opinion resulting from Hicks's first appeal to this court. *See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1408–11 (10th Cir.1987) (*Hicks I*). We highlight only those facts necessary to put the case in context for purposes of this appeal.

In summary, Hicks thought the work environment at Gates was permeated with both racial and sexual hostility. This led her to file a charge of race and sex discrimination with the Equal Opportunity Employment Commission ("EEOC"). *Hicks I*, 833 F.2d at 1410. Among other things, this EEOC charge alleged: "The work environment is hostile where I am concerned. The non-Black guards complain about me to one another, make unnecessary comments to one another and to my supervisor about me."

After this EEOC charge was filed, Hicks began to receive discipline from Gates in the form of written Derogatory Personnel Notations ("DPN's"), verbal warnings, and suspensions without pay. According to Gates, these forms of discipline were necessary because Hicks was a poor worker who had problems getting along with her coworkers. One DPN issued to Hicks stated her job performance was not at an "acceptable level" because of missed radio checks, procedural errors and deficient "key checks." These complaints were repeated in a subsequent DPN that included an additional comment about Hicks's "clock charts" that allegedly did not correspond to her "assigned duties." This DPN further included a charge of mishandling a weapon. All three written DPN's indicated Hicks could receive further discipline, including discharge, if the problems persisted.

Hicks, on the other hand, obviously thought the discipline was in retaliation for her initial EEOC charge of race and sex discrimination. This belief drove her to file four additional charges with the EEOC over a five-month period from December 1980 to April 1981. Each of the subsequent EEOC charges alleged unlawful retaliation by Gates.

Throughout her employment Hicks had particular problems with a supervisor named Gleason. In her first EEOC charge, she alleged she was subjected to sexual harassment and that Gleason "patted me on the buttox [sic]." At trial she testified Gleason told her "he would put his foot up my ass so far that I would have to go to clinic to take it out." *Hicks I*, 833 F.2d at 1410. According to Hicks, Gleason said "I'm going to get you yet." *Hicks I*, 833 F.2d at 1410. She further testified that when Gleason saw her sitting down once during a shift he said "I caught you" or "I got you," and then proceeded to grab her breasts and get on top of her as she fell over. *Hicks I*, 833 F.2d at 1410. Finally, in addition to the allegations of sexual improprieties by Gleason, there was testimony Gleason called black people "niggers" and "coons." Gleason allegedly spoke of "lazy niggers and Mexicans." One of the other guards also allegedly referred to Hicks as "Buffalo Butt."

Hicks fell and was injured on the job in January 1981. She believed her supervisor, Gleason, intentionally did not warn her about the broken step that caused her injury. She also claimed Gleason remarked about her pending EEOC charges, saying: "[I]f I go downtown and I lose my case that he hope I take it like a woman." There was testimony the plant superintendent told Hicks she could not "buck" Gates by going to the EEOC. Hicks believes her injuries from the fall were ignored, and that after the injury she was even required to walk more than usual.

Hicks was discharged by Gates in March, 1981. According to the company, the rea-

son for her discharge was her "poor quality and low output."

Hicks received her Right to Sue letter and filed in federal court after the EEOC found "[n]o reasonable cause" to believe her various charges against Gates. 42 U.S.C. §§ 2000e–5(b), 2000e–5(f)(1). Hicks claimed in her lawsuit she "suffered greater disciplinary action than other guards solely because [she is] black and female." The complaint does not contain any other allegation of sexual discrimination. She further claimed her training was more rigorous and her work environment was hostile because she is black. She claimed retaliation because of her EEOC charges and also alleged a violation of 42 U.S.C. § 1981.

Following a trial lasting more than three days, the district court ordered judgment for Gates. The court rejected all claims of racial and sexual harassment. Although it labeled supervisor Gleason's conduct as "boorish," the court found his conduct was "unrelated to any overt or implicit demand or invitation by him for responsive conduct of any kind by plaintiff." The court concluded her tolerance or consent to conduct by Gleason, and another guard, was not made a condition of continued employment. It also concluded Gates discharged her for her "inability to adequately perform the job for which she was hired and for no other reason." *Hicks I*, 833 F.2d at 1412. The court lastly concluded Hicks failed to carry her burden of proof.

We upheld the district court's rejection of the claim Gates maintained a work environment hostile to black employees. *Hicks I*, 833 F.2d at 1413. We also upheld the finding that Hicks was not subject to quid pro quo sexual harassment. *Id.* at 1414. She was not required to submit to sexual conduct or harassment to keep her job. *Id.* However, we remanded for reconsideration of whether Hicks was subject to a sexually harassing hostile work environment. *Id.* at 1417. In fairness to the district court, we noted this particular Title VII theory did not exist when Hicks's case was tried and decided. *Id.* at 1414. It was announced while Hicks's case was on appeal. *Id.* at 1413 n. 1, 1414. *See, e.g., Meritor Sav.*

*Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) ("[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment."). We remanded for exploration of whether Hicks was subjected to hostile work environment sexual harassment, breaking this broad theory into three separate legal inquiries:

(1) whether acts that are not overtly sexual can nevertheless constitute "sexual" acts under Title VII; (2) whether incidents of sexual harassment that are directed at employees other than the plaintiff can be used as evidence of hostile work environment sexual harassment; and (3) whether incidents of racial harassment which may, by themselves, be insufficient to support a racially hostile work environment claim can be combined with incidents of sexual harassment to prove a pervasive pattern of discriminatory harassment in violation of Title VII.

*Hicks I*, 833 F.2d at 1414–15.

On remand, the district court again entered judgment for Gates, concluding "the plaintiff's failed to prove her claims." In the next section we address in more detail the proceedings in the district court on remand. Generally speaking, on appeal Hicks asserts the district court failed to adhere to the remand mandate, improperly applied the law to the evidence showing hostile work environment sexual harassment, did not impute knowledge of hostile work environment sexual harassment to supervisors at Gates, and, erred as to its consideration of the evidence regarding the reason for her termination by Gates. We deal first with the issue of the mandate.

## II.

The final paragraph of the majority opinion in *Hicks I* concludes the case must be reversed based on the legal analysis in the preceding paragraphs. The court wrote:

Accordingly, the judgment is reversed and the case is remanded for further proceedings in accord with this opinion. The district court should reconsider the

present record and conduct any further hearings deemed necessary for the making of revised findings, conclusions and disposition of the cause on reconsideration of all of the claims.

IT IS SO ORDERED.

*Hicks I,* 833 F.2d at 1419.

The central thesis of Plaintiff's argument in this appeal is the district court failed to act in accordance with the mandate of *Hicks I.* Hicks argues "the District Court did not follow the orders of the Tenth Circuit in its Remand Order and far exceeded any authority given it thereunder." Hicks believes the mandate was ignored because the district judge on remand, Judge Matsch, allegedly disregarded the credibility and conflict determinations made by then District Judge Moore, who presided at the trial. She says Judge Matsch ignored Judge Moore's findings without deciding they were clearly erroneous. She sees this as a violation of the mandate, the doctrine of law of the case, and the rules of civil procedure. She additionally "strongly emphasized" in her main brief that Judge Matsch did not hold further evidentiary hearings. However, elsewhere she states further evidentiary hearings are not necessary.

To decide whether the district court violated the mandate, it is necessary to examine the mandate and then look at what the district court did. As already noted, the district court was instructed to "reconsider the present record and conduct any further hearings deemed necessary for the making of revised findings, conclusions and disposition of the cause on reconsideration of all of the claims." *Hicks I,* 833 F.2d at 1419. The plain language of the mandate neither requires nor prohibits further hearings. It does, however, call for revised findings and conclusions necessary for the disposition of the case. There is nothing in the language suggesting the district court on remand is bound by the original findings.

Binding the district court to the original findings would be inappropriate. The hostile work environment sexual harassment theory of recovery did not exist when evidence was first taken, findings made, and conclusions drawn. The original findings could not possibly take into account a theory not existing when they were made. Therefore, it was important for the district court on remand to be able to "reconsider the present record and conduct any further hearings deemed necessary for the making of revised findings [and] conclusions" so it could determine if the elements of a hostile work environment sexual harassment claim were present.

A review of the record on remand indicates the district court, acting with the approval of Hicks, followed our instructions. Judge Matsch said:

I think before calling on counsel, I should state my understanding of the present task. The judgment from the Court of Appeals ordered that the judgment of this Court, through Judge Moore, was reversed. The case was remanded to this Court for further proceedings in accordance with the opinion of the appellate court....

. . . .

... [I]t seems to me that my task is to reconsider the entire record and evaluate the evidence which is in this record to determine whether the plaintiff has demonstrated that there was a hostile work environment because of sexual harassment and, in that regard, whether sexual conduct was sufficiently pervasive to create a hostile or offensive work environment as determined from the totality of the circumstances, as was the instruction in *Meritor Savings Bank v. Vinson,* and then in this analysis, the Tenth Circuit Court of Appeals directed this Court to consider acts that are not themselves overtly sexual; that is to say, I guess, not lustful, or not directed towards some sexual act, but which are sexual in the sense that the D.C. Circuit held in *McKinney v. Dole* [, 765 F.2d 1129 (D.C. Cir.1985),] that a man wouldn't be treated the same way or such an act wouldn't be the same toward a man, including physical or verbal abuse that, again, is not lustful or directed toward the accomplishment of some sex act.

Secondly, this Court is to consider the evidence of sexual harassment directed at other employees of the company; and third, that the incidence of sexual—of racial harassment and sexual harassment must be considered in combination to determine whether there's a pervasive pattern of discriminatory harassment against the plaintiff as a black female, considering black females as a sub-class of females.

Additionally, this Court is to consider that the Court of Appeals found that there were two incidents, at least two, of serious sexual harassment; that there were threats of physical violence; that there were incidents of verbal abuse; and also, the Court said that there was— the appellate court said that there was evidence that a number of employees had been sexually harassed by Supervisor Gleason.

Finally, this Court was instructed that in making the analysis of the evidence, it is to be considered that the employer violated the EEOC administrative requirement for preservation of relevant records, personnel records, by destroying clock charts and daily reports and that, in consequence of that, the plaintiff is entitled to a presumption that the destroyed documents would have bolstered her case.

The record shows the parties agreed there would be no new evidentiary hearings. Hicks additionally agreed the district court should approach its task "in terms of an analysis of all of the evidence." The only problem Hicks had with the district court was when it refused to reconsider the racial harassment claim in addition to the hostile work environment sexual harassment claim. The district court, however, correctly realized that neither the racial harassment claim nor the quid pro quo sexual harassment claim were in issue on remand because both were rejected in *Hicks I.* 833 F.2d at 1413–14. *See, e.g., Laffey v. Northwest Airlines, Inc.,* 642 F.2d 578, 584–85 (D.C.Cir.1980) (district court has no power to reconsider issues laid to rest on a prior appeal).

 Hicks made no other objection regarding the district court's interpretation of the mandate or its handling of the case on remand. Hicks did not suggest to the district court that it had no authority to resolve conflicts in testimony. Thus, the general rule that an appellate court will not consider an issue raised for the first time on appeal applies. *Farmers Ins. Co. v. Hubbard,* 869 F.2d 565, 570 (10th Cir.1989). Exceptions to this rule are rare and generally limited to cases where the jurisdiction of a court to hear a case is questioned, sovereign immunity is raised, or when the appellate court feels it must resolve a question of law to prevent a miscarriage of justice. *Hubbard,* 869 F.2d at 570; *Stahmann Farms, Inc. v. United States,* 624 F.2d 958, 961 (10th Cir.1980). The failure to raise the issue with the trial court precludes review except for the most manifest error. *Gundy v. United States,* 728 F.2d 484, 488 (10th Cir.1984). Hicks offers no reason why we should grant an exception to the general rule here, and, after reviewing the record, we believe no basis for an exception is present.

The matter of what questions may be addressed for the first time on appeal is within our discretion and decided on a case by case basis. *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Cavic v. Pioneer Astro Indus.,* 825 F.2d 1421, 1425 (10th Cir.1987). In determining whether an exception is warranted, we are mindful of the policies behind the general rule. The facilitation accorded appellate review by having the district court first consider an issue is important. *City of Waco, Texas v. Bridges,* 710 F.2d 220, 228 (5th Cir.1983), *cert. denied,* 465 U.S. 1066, 104 S.Ct. 1414, 79 L.Ed.2d 741 (1984). In addition, our respect for the district court means "the policy of declining to consider an argument not raised below is strongest where the district judge was not aware of the argument." *Richerson v. Jones,* 572 F.2d 89, 97 (3d Cir.1978). It is also unfair to the opponent if one party is allowed to argue an issue not raised in the trial forum. We think such a practice leads to unfair surprise in the appellate court and would, if allowed,

require us to frequently remand for additional evidence gathering and findings. The need for finality in litigation and conservation of judicial resources counsels against exceptions. *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 996 (2d Cir.1981).

■ Even assuming Hicks properly raises the issue of whether the district court followed the mandate, we still find no error. We have already thoroughly explained the district court was free to hold any hearings necessary to make revised findings addressing the new theory of hostile work environment sexual harassment. The district court acted well within the law of this case. 1B J. Moore, J. Lucas, T. Currier, Moore's Federal Practice ¶ 0.404[10] (1988) ("[W]hen the further proceedings are specified in the mandate, the district court is limited to holding such as are directed. When the remand is general, however, the district court is free to decide anything not foreclosed by the mandate.") (footnotes omitted). Furthermore, it was unnecessary for the district court to declare any previous findings clearly erroneous under Fed.R.Civ.P. 52(a) when undertaking the task of making findings to address a totally new theory of law. *See, e.g., Holsey v. Armour & Co.*, 743 F.2d 199, 204 (4th Cir.1984) (in Title VII suit the district court complied with appellate court mandate when, after hearing from the parties, it exercised independent judgment and reconsidered findings of fact and conclusions of law in light of an intervening Supreme Court decision), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985).

## III.

Turning now to the merits, the district court concluded the Plaintiff failed to prove by a preponderance of the evidence her hostile work environment sexual harassment claim. Plaintiff challenges the district court's ruling on all three separate aspects of this theory. *See* maj. op. at 968.

Some acts not overtly sexual may nevertheless constitute "sexual" acts. If present, these acts may establish a Title VII hostile work environment sexual harassment claim. *Hicks I*, 833 F.2d at 1414–15. The *Hicks I* majority, quoting another case, said: "[W]e hold that any harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII." *Id.* at 1415 (quoting *McKinney v. Dole*, 765 F.2d 1129, 1138 (D.C.Cir.1985). On remand, the majority directed the district court to consider "all the evidence relating to sexual harassment within the standard we accept from *McKinney*." *Id.* at 1415.

Plaintiff contends the mandate was violated because the district court "made new findings of fact and credibility without having been the original fact-finder." This argument has already been rejected. However, Plaintiff obviously further believes the district court's findings on remand were erroneous and we therefore review them for reversible error.

District court fact findings in a hostile work environment sexual harassment case are examined for clear error. Fed.R.Civ.P. 52(a). "Whether this court would have made such findings is not the issue. We are not the fact finder." *Ebert v. Lamar Truck Plaza*, 878 F.2d 338, 339 (10th Cir. 1989). A finding is clearly erroneous only if after reviewing all the evidence we are left with the definite and firm conviction a mistake was made. We cannot reverse simply because we might have decided the case differently. *Willner v. University of Kansas*, 848 F.2d 1023, 1030 (10th Cir. 1988), *cert. denied*, 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989).

The parties elected to rely on the record on remand for purposes of revised findings, and no additional evidence was taken. We therefore see no reason to deviate from our usual standard of review.

■ In any event, a review of the findings of the district court, together with the evidence, does not leave us with a firm conviction a mistake was made. The dis-

trict court concluded it was not persuaded by Plaintiff's evidence because even though she filed many charges with the EEOC, she never mentioned in these charges most of the incidents of sexual or racial harassment on which she based her lawsuit. It is true, of course, that the hostile work environment theory, as we understand it today, was not developed when Hicks was filing her EEOC charges. Nevertheless, telling the EEOC early on about the alleged treatment she eventually complained about in her lawsuit would have bolstered her EEOC case. Therefore, we conclude the district court did not commit clear error by discounting accusations raised in the lawsuit. As the district court observed, "the [multiple EEOC] charges do not include anything about this [sic] most serious parts of [Plaintiff's] testimony. So I discount that testimony and discount it substantially."

Moreover, there is evidence in the record that Hicks was discharged for poor performance. Much of this evidence has been recounted. Suffice it to say, in summary, there was evidence Hicks had trouble performing her job from the beginning. She required extra training because she could not remember her rounds. She missed radio checks and mishandled a weapon. In addition, she had trouble getting along with co-workers, including women, and there was evidence she challenged one woman to a fight and spoke harshly to another. Finally, it is impossible to find clear error in the district court's conclusion that some of her complaints are not examples of sex discrimination. The guard who patted her on the leg testified he likewise patted men and the district court could consider this testimony. The incident where she was told to jump off a loading dock was neither racial nor sexual. The conduct and various statements allegedly made by Supervisor Gleason, while boorish, belligerent and uncalled for, do not sufficiently evince a hostile work environment. (*See* maj. op. at 967.) The district court said if the case had been entirely against Gleason, or if Gleason had been the only source of reported performance problems Plaintiff was having, or if he had been the

final decision maker regarding Plaintiff's employment, then Plaintiff would have a strong case. However, "Gleason wasn't the only person involved" who was critical of Plaintiff's work.

"For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of the [the victim's] employment and create an abusive working environment.'" *Vinson,* 477 U.S. at 67, 106 S.Ct. at 2405 (quoting *Henson v. Dundee,* 682 F.2d 897, 902 (11th Cir.1982)). Given all the evidence, it was not clearly erroneous for the district court to hold for Gates.

We further believe the district court was not clearly erroneous in ruling against Plaintiff on the second inquiry relevant to a claim of hostile work environment sexual harassment. "Evidence of a general work atmosphere . . . as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim." *Hicks I,* 833 F.2d at 1415. On remand, the district court noted one female worker testified Gleason behaved inappropriately toward her in 1983, two years after Plaintiff was dismissed. However, conflicting testimony by another guard, who was employed at Gates while Plaintiff was, said there was no sexual harassment at Gates, or by Gleason. The court was not clearly erroneous in crediting the testimony favorable to Gates and concluding Plaintiff failed to prove hostile work environment sex discrimination by a preponderance of the evidence.

Finally, in determining if the work environment is pervasively hostile, the trial court may aggregate evidence of racial hostility with evidence of sexual hostility. *Hicks I,* 833 F.2d at 1416. The district court recognized the necessity of this in its findings. Most of the evidence of racial slurs was pinned on Gleason, and the district court again focused on him in its analysis, concluding the work atmosphere as a whole was not sufficiently hostile to qualify as an abusive working environment. It is apparent the district court did not believe Gleason's comments were anything more than "a few isolated incidents

of racial enmity" and Hicks failed to persuade the district court that evidence of racial and sexual harassment—taken together—created a work environment heavily polluted with discrimination. *Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986). *See Hicks I,* 833 F.2d at 1412-13. This view of the evidence is not clearly erroneous.

## IV.

The remaining arguments are easily disposed. First, it is unnecessary to reach the issue of whether Gates is liable under agency principles since Hicks failed to prove her sexual harassment claim. Second, evidence in the record indicates the Plaintiff was not discharged in retaliation for her EEOC charges and the district court's reliance on this evidence to reject the retaliation claim is not clearly erroneous. *Gulley v. Orr,* 905 F.2d 1383, 1385 (10th Cir.1990) (court reviews findings of fact regarding Title VII retaliation claim for clear error). Furthermore, in assessing the evidence, the district court knew of the presumption Plaintiff was entitled to regarding the clock-chart records. Nevertheless, as discussed, other evidence supporting her termination was still present. Finally, no argument was made to this court about the § 1981 claim and we therefore deem the matter waived, as did the district court.

AFFIRMED.