**Jeraldine LORD, Plaintiff,**

v.

**KERR–MCGEE COAL CORPORATION, S. Kim Elliot, and Paul Keithan, Defendants.**

**No. 91–CV–1055–B.**

United States District Court, D. Wyoming.

Sept. 30, 1992.

William H. Curley, Gillette, WY, for plaintiff.

Carolyn Gregg Hill, Andrews Davis Legg Bixler Milsten & Price, Oklahoma City, OK, Gary R. Scott, Hirst & Applegate, P.C., Cheyenne, WY, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This matter comes before the Court on defendants' motion for summary judgment. The Court, having considered the materials in support of and in opposition to the motion, having weighed the arguments of counsel, and being fully advised in the premises, FINDS and ORDERS as follows:

### Background

Jeraldine Lord ("Lord") is an employee at Kerr–McGee's surface coal mine near Wright, Wyoming, where she has been employed since 1979. Lord has been demoted and promoted several times in both the production and maintenance departments. In July of 1990, Lord was demoted from the job of Component Repairer to her previous job, Maintenance Laborer. The litigation stems from this demotion, and an earlier demotion in 1987.

In January of 1987, Lord applied for and was promoted to the job of Component Repairer for the Jacobs Ranch Mine. The job entailed organizing and maintaining the tool room and repairing small tools. From 1987 through 1990, Lord performed her job at an allegedly less than satisfactory level.

Apparently, training for Component Repairer was of the "on the job" sort. Kerr–McGee had only one Component Repairer prior to Lord and he was a mechanic with over thirty years experience. Kerr–McGee evaluated each employee's performance annually. At the end of Lord's first year as Component Repairer, she received the lowest possible job performance rating. Kerr–McGee decided Lord was in need of "more formal" training which was administered over the next two years.

In November of 1989, Kerr–McGee sought to find out why Lord was doing poorly at her new job. Kerr–McGee sug-

gested to Lord that she be tested regarding specific functions of her job. The test appeared to be job-related and involved mechanical jargon and other simple mechanical concepts. Lord failed the first test. After an unrelated leave of absence, Lord took the test a second time and again failed it. After Lord was demoted in 1990, another woman, a former payroll clerk, passed the test and is now employed as Component Repairer.

During the course of her three years as Component Repairer, Kerr–McGee offered to pay 90% of the tuition and fees for classes which might improve Lord's skills. However, Lord did not take advantage of this offer.

During this period of time generally, one of Lord's supervisors was Paul Keithan. Lord and Keithan never related well to each other. Keithan talked about Lord behind her back, was generally rude and insensitive to her, and told outside vendors she was "dumb."

In the Spring of 1990, Kerr–McGee brought in an outside professional to analyze Lord's situation. The professional determined that Lord had a third grade reading and comprehension level which caused, in part, her inability to properly perform her new job.

On July 12, 1990, Lord was demoted to her previous job of Maintenance Laborer with no loss of seniority. Lord did not avail herself of the internal complaint procedure as specified in the employee handbook of Kerr–McGee. Neither the State of Wyoming nor the EEOC found Lord's case to have merit. Lord sued pursuant to her option to do so provided in the EEOC response letter. She alleged both sexual harassment and intentional infliction of emotional distress.

### Standard for Summary Judgment

The standard for issuing a summary judgment was stated recently by the Tenth Circuit:

In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265] (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323 [106 S.Ct. 2553].

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex* at 322 [106 S.Ct. at 2552]; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]. The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251 [106 S.Ct. at 2511].

*Manders v. Okl. ex rel. Dept. of Mental Health*, 875 F.2d 263, 265 (10th Cir.1989).

### Contentions Of The Parties

Defendant Kerr–McGee, *et al.* argues that Lord fails to state a claim upon which relief can be granted, or, alternatively, that this Court should order summary judgment in favor of defendants. Kerr–McGee contends that Lord cannot establish a prima facie case of discrimination because she already has admitted facts in pretrial testimony which prove otherwise.

Kerr–McGee contends that Lord's complaints do not constitute an "intimidating,

hostile or offensive working environment" as a matter of law. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir.1987) (*"Hicks I"*). Kerr–McGee urges that Lord has failed to articulate sufficient evidence to refute the reason that she was demoted, i.e., poor job performance.

Kerr–McGee also argues that this Court should strike Lord's intentional infliction of emotional distress claim. Kerr–McGee offers that Lord, in fact, has neither quit her job as a result of any stress, nor has she been diagnosed as having suffered any job-related stress. Moreover, Kerr–McGee points out that Lord needed to plead intentional infliction of emotional distress as a separate tort because such a tort is not considered an element of sex discrimination under Title VII. *See* 42 U.S.C. § 2000e–5(g). Even if Lord had pleaded the tort separately, Kerr–McGee contends the claim would fail because Lord has presented no evidence of "extreme and outrageous conduct intentionally or recklessly caus[ing] severe emotional distress." *See Leithead v. American Colloid Co.*, 721 P.2d 1059, 1065 (Wyo.1986).

In contrast, Lord alleges she was unlawfully harassed based on her gender. To-wit, supervisors never said nice things to her; supervisor Keithan called her "dumb" and talked about her behind her back; male employees were treated better than she was at the warehouse area; foremen were not nice to her; and, supervisor Elliot treated her as "mentally retarded" by virtue of the test Elliot administered to her regarding her job skill level. Lord argues the real reason why she was demoted from her job in the toolroom was due to gender discrimination against her. She seeks back-wages and desires to be returned to her toolroom job.

### Discussion

This Court is persuaded that Lord's allegations sound in both sexual harassment and gender discrimination. However, under either legal theory, Lord is unable to make out a prima facie case against Kerr–McGee.

■ (1) *Sexual Harassment:* In *Hicks v. Gates Rubber Co.*, 928 F.2d 966 (10th Cir.1991) (*"Hicks II"*), the Tenth Circuit held that a hostile work environment sexual harassment claim exists when (a) harassment or other unequal treatment would not have occurred "but for" the gender of the employee, and (b) the harassment is "sufficiently patterned or pervasive" to comprise an illegal condition of employment. *Hicks II* at 971. In turn, the court must use evidence of the general work atmosphere as well as evidence of specific hostility directed toward plaintiff to evaluate plaintiff's claims. *Id.* at 972. Plaintiff must prove by a preponderance of the evidence that the work environment was sufficiently hostile or harassing. *Id.*

■ A careful review of Lord's deposition and the accompanying exhibits reveals that the evidence does not support a legitimate claim of hostile work environment sexual harassment.[1] The evidence presented by Lord in her deposition can be usefully reduced to three related areas: (1) plaintiff's supervisors regularly referred to her as "dumb" or "retarded" when speaking with other employees and vendors. Plaintiff's Deposition at 11, 12, 48, 115, 139, 228, 253; (2) plaintiff's supervisors regularly either ignored her or "ran her down," i.e., spoke badly about plaintiff, behind her back or teased her. Plaintiff's Deposition at 29, 66, 76, 157, 230, 236, 242; and, (3) men, generally, were treated with more respect and more fairly than women at Kerr–McGee. Plaintiff's Deposition at 28–30, 45, 70–73, 195–99.

True, Lord presents some evidence of specific hostility toward her in the deposition. Plus, there appears to be some evidence of a generally hostile work environment. However, evidence in the deposition is less than clear regarding whether these events would have occurred "but for" Lord

---

1. In addition to hostile work environment sexual harassment, another type of harassment is called *quid pro quo* sexual harassment. This is where an employer or supervisor requires an employee to submit to sexual conduct or harassment to keep her job. *Hicks II,* 928 F.2d at 968. Lord testified herself that she was not subject to such harassment. Plaintiff's Deposition at 251.

being a woman. Moreover, the requisite "pattern" or "pervasiveness" required by the Tenth Circuit seems to be lacking.[2]

Furthermore, Lord's own deposition contains substantial evidence that she was demoted because she performed her job inadequately. The record establishes that Lord had little, if any, of the mechanical skills needed to succeed in the toolroom. Plaintiff's Deposition at 81, 104. Prior to the promotion to the toolroom, Lord had no experience with tools. Plaintiff's Deposition at 36. Lord consistently received poor evaluations on her work performance evaluations. *Id.* at 212–13, 255. More than one supervisor observed that her skills were lacking and her performance was poor. *Id.* at 123–27. Lord even admitted that her poor evaluations were not principally motivated by gender discrimination. *Id.* at 219–220. Thus, this Court concludes that Lord's sexual harassment claim fails as a matter of law.

■ (2) *Sexual Discrimination:* Lord's claims also may be analyzed under the legal theory of gender discrimination, in particular, "mixed motive" gender discrimination. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *Price Waterhouse* established that plaintiff must bear the burden of proving by direct evidence that an impermissible criterion was a "substantial factor" in the adverse employment decision at issue. *See e.g., Wallace v. Dunn Constr. Co., Inc.,* 968 F.2d 1174, 1180 (11th Cir.1992) (court summarizes the "mixed motive" law as articulated by the Supreme Court in *Price Waterhouse* ).

■ If plaintiff succeeds in proving her case in chief, the burden of persuasion shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made absent the employer's unlawful or discriminatory motive. *Id; see also Washington v. Lake County, Illinois,* 969 F.2d 250, 255 (7th Cir.1992).

■ Assuming Lord was able to prove that gender was a substantial factor in Kerr–McGee's decision to demote her from the toolroom, Lord's deposition, outlined *supra,* strongly suggests that Kerr–McGee would have demoted her absent the alleged discriminatory motive. Thus, Kerr–McGee would establish the requisite defense to Lord's claim as a matter of law.

The Court observes that Lord's claims do not rise to the level of harassment or discrimination alleged in recent cases. *See e.g., Hicks v. Gates Rubber Co., ("Hicks I"),* 833 F.2d 1406, 1408–11 (10th Cir.1987); *see also Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986). If the facts surrounding *Hicks I* did not amount to sexual harassment or sexual discrimination, it seems unlikely Lord's claims amount to such. As a result, this Court holds that the facts alleged by Lord do not establish a *prima facie* case of either hostile environment sexual harassment or actionable gender discrimination.

THEREFORE, IT IS

ORDERED that defendants' Motion for Summary Judgment be, and the same hereby is, GRANTED.

ORDERED that plaintiff's claim regarding intentional infliction of emotional distress be, and the same hereby is, DISMISSED for failure to state a claim upon which relief can be granted. Plaintiff's case is hereby dismissed with prejudice.

---

**2.** This Court notes that it is at a disadvantage because Lord's deposition is the only deposition in the record. This limited perspective does little to facilitate an objective analysis of Lord's complaints. Nonetheless, it is an analysis this Court must perform despite the limiting perspective.