25 F.3d 1058
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Walter Stephen QUAY, Plaintiff-Appellant,
v.
SHEFFIELD STEEL CORPORATION, a Delaware Corporation; United
Steelworkers of America, Local No. 2741; United
Steelworkers of America AFL-CIO-CLC,
Defendants-Appellees.
 No. 93-5212.
 United States Court of Appeals,
Tenth Circuit.
 June 2, 1994.
 
 1
 Before ANDERSON and KELLY, Circuit Judges, and BELOT,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff Walter Stephen Quay appeals from a grant of summary judgment in favor of defendants Sheffield Steel Corporation (Sheffield) and United Steelworkers of America (union). Plaintiff contends that disputed issues of fact exist, precluding summary judgment. We affirm.
 
 
 4
 Plaintiff was employed by Sheffield as a crane operator. The union was his collective bargaining representative. Following an on-the-job injury on July 2, 1991, he was examined by several doctors who came to different conclusions about his ability to return to work.
 
 
 5
 The Work Exercise Rehabilitation Center (WERC) concluded plaintiff was unable to return to his previous job. Sheffield requested that WERC evaluate the position of spellman, which requires the ability to rotate through the jobs of tableman, shearman, and crane operator. WERC concluded that, with modifications, plaintiff should be able to perform the job.
 
 
 6
 In February 1992, Sheffield informed plaintiff it wanted him to take the spellman job. Plaintiff requested that his doctor evaluate the job, and Sheffield agreed. Dr. John Josephson concluded that plaintiff would be unable to perform the job if he were required to do any of the following activities: climb stairs, drive a crane, stoop, crouch, walk on uneven surfaces, stand or sit for more than half an hour to one hour at a time, lift over fifteen pounds, push or pull over ten pounds, or walk sideways in narrow spaces or on cat walks.
 
 
 7
 On April 13, 1992, Sheffield informed plaintiff it would be able to accommodate his disabilities, and that he would be scheduled for work as a shearman beginning the week of April 19.[2] Sheffield informed the union and plaintiff that it intended to assign a helper to plaintiff to perform the duties plaintiff felt violated his work restrictions. On April 16, Dr. John Hallford issued a slip stating that plaintiff was unable to return to work.
 
 
 8
 On April 17, union officials advised plaintiff to try the spellman job. They discussed Sheffield's intent to assign a helper to perform the tasks plaintiff felt violated his restrictions. Plaintiff advised the union that he would not perform the spellman job. He did not report for work the week of April 19, and did not call in.
 
 
 9
 On May 8, 1992, Sheffield advised plaintiff it had determined he was able to return to work as a spellman and that he must report for duty on May 17. He was warned that failure to report to work promptly would result in immediate termination of employment. Plaintiff's attorney responded on May 13, stating that the job Sheffield ordered plaintiff to take would require him to violate most, if not all, the restrictions imposed by Dr. Josephson.
 
 
 10
 Sheffield's attorney wrote a letter dated May 15 which stated that the position plaintiff was to perform would not require him to violate the medical restrictions imposed, and warned that his failure to report would subject him to discipline, including termination. Plaintiff did not report to work as scheduled the week of May 17, and did not call in. Sheffield terminated his employment effective May 24, 1992.
 
 
 11
 Plaintiff asked the union to file a grievance on his behalf. Following an investigation, the union decided not to file a grievance because it did not believe the grievance could succeed.
 
 
 12
 Plaintiff commenced this action against Sheffield and the union, alleging that Sheffield unlawfully terminated him and that the union breached its duty of fair representation. Sheffield and the union moved for summary judgment. The district court concluded that Sheffield did not violate the collective bargaining agreement by terminating plaintiff because plaintiff failed to properly notify Sheffield of his absences, as required by article 344 of the collective bargaining agreement,[3] and that the union did not breach its duty of fair representation.
 
 
 13
 We review a summary judgment de novo, applying the same legal standard as the district court. Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir.1992). Summary judgment is appropriate "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If the party opposing summary judgment has the burden of proof at trial, he must identify sufficient evidence showing the existence of an issue to be tried. Mares, 971 F.2d at 494. The proper inquiry is " 'whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.' " Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).
 
 
 14
 An employee may bring suit against his employer for breach of a collective bargaining agreement, but ordinarily is required to attempt to exhaust any grievance or arbitration remedies. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 163 (1983). However, when the union representing the employee in the grievance procedure breaches its duty of fair representation, the employee may bring suit against both the employer and the union. Id. at 164. A "hybrid action" such as the present one comprises two causes of action: an action against the employer under 301 of the Labor Management Relations Act, 29 U.S.C. 185 (LMRA), and an action against the union for breach of the duty of fair representation, which is implied under the National Labor Relations Act. DelCostello, 462 U.S. at 164. To prevail against either party, the employee must prove both that the employer violated the collective bargaining agreement and that the union breached its duty. Id. at 165; Aguinaga v. United Food & Commercial Workers Int'l Union, 993 F.2d 1463, 1469 n. 1 (10th Cir.1993), cert. denied, 114 S.Ct. 880 (1994).
 
 
 15
 An employee may not establish a breach of the duty of fair representation merely by showing that the union refused to process his grievance. See Vaca v. Sipes, 386 U.S. 171, 191 (1967). Further, mere negligence in handling a grievance is insufficient to establish a breach of the duty. United Steelworkers v. Rawson, 495 U.S. 362, 372-73 (1990). Rather, the employee must show that the union's actions were "arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at 190. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991)(quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)). Its actions are discriminatory if they are invidious. Aguinaga, 993 F.2d at 1470. Bad faith requires proof of fraud, deceit, or dishonesty. Id.
 
 
 16
 Plaintiff argues that the union breached its duty of fair representation by pressuring him into taking the spellman job notwithstanding his medical restrictions. He also argues that the union's failure to file a grievance resulted from a conflict of interest that arose because it had agreed with Sheffield that he should return to work as a spellman. He points to the fact the union was in the midst of contract negotiations as evidence of bad faith.
 
 
 17
 These arguments were not raised in the district court. Consequently, with certain exceptions, they cannot be raised for the first time on appeal. See Hicks v. Gates Rubber Co., 928 F.2d 966, 970 (10th Cir.1991). Plaintiff has offered no reason why we should grant an exception to this rule, and we find no basis in the record for making an exception.
 
 
 18
 Plaintiff argues that the union's decision not to file a grievance on his behalf was arbitrary, capricious, and in bad faith. In deciding not to file a grievance, union officials reviewed article 344, which they understood to mean that an employee is considered to have quit voluntarily if he fails to report for work as scheduled and fails properly to "call off" within five days without a good excuse. They further considered that plaintiff failed to report to work for more than five days and failed properly to "call off." They did not believe plaintiff's attorney's May 13 letter stating that plaintiff could not perform the spellman job would be persuasive because Sheffield had tailored the job so that plaintiff would not have to perform any tasks he felt violated his medical restrictions. They also noted that Sheffield had instructed plaintiff to return to work on May 17 and had warned him that he would be terminated if he failed to report.
 
 
 19
 The union rationally considered the merits of the grievance, but concluded it could not prevail. Regardless of whether the union would have been proven wrong, see Vaca, 386 U.S. at 192-93 (holding union does not breach duty of fair representation merely because grievance later found to be meritorious), we conclude that plaintiff failed to identify evidence that the union's actions were irrational or invidious, or the result of fraud, deceit, or dishonesty. The district court properly granted summary judgment on the breach of duty of fair representation claim. This conclusion disposes of the 301 claim as well. See DelCostello, 462 U.S. at 165.
 
 
 20
 The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 
 **
 Honorable Monti L. Belot, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Plaintiff actually was scheduled to work as a spellman
 
 
 [3]
 This article provides that a break in continuous service includes an "[a]bsence for five (5) consecutive working days without properly notifying the Company, in which case the employee shall be considered to have quit voluntarily." Appellee United Steelworkers' App., tab C(2) at 54