BRISCOE, Circuit Judge,
concurring in part and dissenting in part.
The majority affirms the district court’s grant of summary judgment in its entirety. Although I concur in the judgment affirming the ruling against Shero with regard to his claims arising out of the denial of the city council packets and the time limitation, I conclude that the majority unnecessarily addresses the merits of those claims. *1205 With regard to Shero’s claim that the filing of the declaratory judgment action against him constituted retaliation for exercising his First Amendment rights, I respectfully dissent. I would reverse and remand this issue for further proceedings.

I. The city council packets

The majority concludes that the defendants could not have violated Shero’s First Amendment rights by denying him the city council packets. Because Shero relied on a different theory before the district court, I would not address the merits of this claim.
Shero argues before this court that the defendants interfered with his “First Amendment right to seek information” by denying him the city council packets. Aplt.’s Br. at 37. The right to seek information is a corollary to the freedom of the press. In Branzburg v. Hayes, 408 U.S. 665, 681, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the Supreme Court remarked that “without some protection for seeking out the news, freedom of the press could be eviscerated.” Accordingly, the Court has noted that “[t]here is an undoubted right to gather news ‘from any source by means within the law.’ ” Houchins v. KQED, Inc., 438 U.S. 1, 11, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (quoting Branzburg, 408 U.S. at 681-82, 92 S.Ct. 2646). Shero relies on these cases to support his First Amendment claim that he had a right to the city council packets.
Shero asserts this theory for the first time on appeal. In his complaint before the district court, Shero relied on the First Amendment right to petition the government for redress. See Compl., Vol. I, ex. 4, ¶ 31. In later filings, Shero purported to rely on “the rights to Free Speech [and] to Petition the Government for Re-dress____” Pl.’s Mot. for Summ. J., Vol. Ill, ex. 16, at 6; see also PL’s Resp. to Def.’s Mot. for Summ. J., Vol. VI, ex. 18, at 9-13. Shero based his claim on the theory that the documents were necessary for him to exercise his right to petition the government effectively. Whether Shero’s right to petition the government was violated was the issue the district court addressed when it identified Shero’s claim in its ruling: “Shero claims that his requests for council packets were in furtherance of his right to petition the government, because the information in the council packets was necessary for him to present informed arguments to the City Council.” Op. & Order, Aplt.’s Br., Appx. B, at 6. All of the arguments he made to the district court were tailored to this theory. Shero never argued that the defendants’ actions denied him his rights under the First Amendment’s guarantee of freedom of the press. He never referenced a “right to seek information” or a “right to gather news from any source by means within the law” apart from his invocation of the right to petition. Although the defendants, in their motion for summary judgment, cited several cases on this point, see Def.’s Mot. for Summ. J., Vol. II, ex. 15, at 16-18, Shero never relied on these cases, and he continued to maintain that denial of the packets violated his First Amendment right to petition the government for redress. As a result, this argument was neither squarely presented to the district court, nor addressed by the district court.
“Absent compelling reasons, we do not consider arguments that were not presented to the district court.” Crow v. Shalala, 40 F.3d 323, 324 (10th Cir.1994). Although we have discretion to address arguments raised for the first time on appeal, we generally exercise that discretion only “where the jurisdiction of a court to hear a case is questioned, sovereign immunity is raised, or when the appellate court feels it must resolve a question of law to prevent a miscarriage of justice.” Hicks v. Gates Rubber Co., 928 F.2d 966, 970 (10th Cir. *1206 1991). The first two exceptions clearly do not apply here, and there is no reason to believe that a miscarriage of justice would result from a refusal to consider this issue. Shero has been represented by counsel throughout this litigation. He has had a number of opportunities to advance this theory before the district court: in his initial complaint, his amended complaint, his motion for summary judgment, his response to the opposing parties’ motion to dismiss, and his response to their motion for summary judgment. Despite these opportunities, Shero never mentioned the “right to seek information” or to “gather news” now claimed in his brief.
The danger of permitting an appellant to raise even a related issue on appeal is evident here: although the defendants address this argument in their brief, they are understandably confused about what Shero is arguing, and they devote the bulk of their arguments to rebutting any claim that they violated Shero’s right to petition the government for redress. See Aples.’ Br. at 23-26. By considering this issue, the majority “run[s] the risk of an improvident or ill-advised opinion, given our dependence as an Article III court on the adversarial process for sharpening the issues for decision.” Hill v. Kemp, 478 F.3d 1236, 1251 (10th Cir.2007) (citation and quotation marks omitted). “[T]o avoid error, we are dependent on the full development of issues through the adversarial process and the initial testing of ideas in trial courts where advocates have an opportunity to present more than thin briefs and fifteen minute oral arguments.” Id. While Shero’s theory may have little merit, I am hesitant to foreclose relief to litigants in future cases with similar facts by ruling on this issue without the benefit of the district court’s insight and full, well-reasoned argument by the parties. Because Shero failed to argue that his “right to seek information” was violated before the district court, I would not now consider it.

II. The time limitation at city council meetings

The majority also concludes that the defendants could not have violated Shero’s First Amendment rights by limiting his speaking time at city council meetings to three minutes. Because Shero has failed to present a clear enunciation of the issue or authority to support it, I would not address the merits of this argument either.
The majority assumes that Shero is challenging the district court’s application of First Amendment forum analysis, and affirms the district court on this basis. (Maj. Op. at 1202-03.) It is not apparent that Shero has reasserted the same argument that he made to the district court. On appeal, he often appears to be arguing that the time limitation supports his claim for retaliation. This is clearest in his reply brief, in which Shero devotes an entire section to arguing that the “unprecedented limitation by Grove was in retaliation for Shero publicly speaking out against corruption.” Aplt.’s Reply at 15. Shero also failed to argue this aspect of his retaliation claim before the district court, and for the same reasons already stated, we should not now consider it.
As for the district court’s forum analysis, Shero purports to “concur[ ] with ... the District Court’s conclusion on allowing members of the public to speak” and its “conclusion about opening facilities to speakers,” but nonetheless argues that it “erred in ruling that, as a matter of law, Shero’s First Amendment rights were not implicated by the limitation.” Aplt.’s Br. at 42-^43. If this language in fact challenges the district court’s forum analysis, Shero has not provided us with any reason to question the district court’s ruling. He cites only four cases in the section of his brief devoted to the time limitation, see id. at 42-45, and two of these cases simply provide broad statements of the purposes *1207 behind the First Amendment. While the other two cases might conceivably apply, Shero provides no discussion of whether they apply, and if so, how they should be applied. He provides no guidance as to what type of forum a city council meeting is, what standard we should apply here, how we should apply the standard to these facts, or whether we should even apply forum analysis at all.
Because Shero fails to present reasoned argument on this point, I would not consider it. Where “there are a few scattered statements” in an appellant’s brief that “suggest dissatisfaction” with the district court’s ruling, as there are here, we have held that “such perfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review.” Murrell v. Shalala, 43 F.3d 1388, 1389 n. 2 (10th Cir.1994). The reason is clear. In order to reverse the district court’s determination, we would have to fashion an argument in Shero’s favor ourselves. However, “the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.” Drake v. City of Fart Collins, 927 F.2d 1156, 1159 (10th Cir.1991). Further, as is the case with issues that were not argued below, to rule on this issue “would run the risk of an improvident or ill-advised opinion[.]” Kemp, 478 F.3d at 1251.
The danger of rendering an ill-advised opinion is particularly prevalent with regard to this claim, which presents legal issues of first impression in this circuit. See (Maj. Op. at 1202.) The majority may be correct that in most cases, a limitation on speaking time at a public meeting is a permissible restriction on speech — at least when that limitation is imposed pursuant to an official policy established prior to the meeting. In this case, however, there are additional allegations that no official policy was in place prior to the meeting and that Shero was the only speaker subjected to a time limitation. According to Shero, no official policy of limiting speakers was imposed until long after the challenged time limitation was imposed. The cases cited in the majority’s opinion dealt with limitations imposed pursuant to an official policy that was already in place at the time of the meeting. See Rowe v. City of Cocoa, Fla., 358 F.3d 800, 803 (11th Cir.2004); Wright v. Anthony, 733 F.2d 575, 577 (8th Cir. 1984). They provide no clear guidance as to how the very different facts presented in this case may affect our decision.
By considering this issue, the majority has not only run the risk of an ill-advised opinion, but has also addressed an issue that Shero may not have even raised. I would not address the merits of this issue.

III. Shero’s retaliation claim

The majority concludes that there is no merit to Shero’s claim that because he spoke out at city council meetings and expressed concern about the actions of city council members, the defendants retaliated by fifing a declaratory judgment action against him.[1] I disagree.
The majority applies our three-factor test for the likely success of a retaliation claim, considering whether (1) Shero was engaged in constitutionally protected activity; (2) the defendants’ action caused She-ro to suffer an injury that would chill a person of ordinary fitness from continuing to engage in that protected activity; and (3) the defendants’ action was substantially motivated as a response to Shero’s constitutionally protected conduct. (Maj. Op. at *1208 1203 (citing Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir.2000)).) As the majority correctly notes, Shero claims that the alleged retaliation resulted from his continued criticism of members of the city council, both at city council meetings and in other fora. This is an unquestionably protected activity, and the first prong of the test is therefore satisfied. The majority does not believe, however, that the filing of the action against Shero can meet the second prong of the test. The majority reaches this conclusion because, first, the purpose of a typical declaratory judgment action is to declare rights, and second, Shero could not be ordered to pay damages. (Maj. Op. at 1204.)
We have previously recognized that “a governmental lawsuit brought with the intent to retaliate against a citizen for the exercise of his First Amendment rights is itself a violation of the First Amendment and provides grounds for a § 1983 suit.” Beedle v. Wilson, 422 F.3d 1059, 1066 (10th Cir.2005) (holding that libel action by county hospital was sufficient injury to chill exercise of rights). While this lawsuit may differ from others because Shero could not be held liable for monetary damages, there are other disadvantages to being named as a defendant in a declaratory judgment action. Shero was forced to devote time and effort to the defense of the action, and although he was eventually awarded attorney’s fees, this result was not known until after he had utilized his own assets in order to pay his initial costs. See Aplt.’s Br. at 49. Looking at the suit prospectively, moreover, he may have been unaware of the possibility or likelihood of recovering attorney’s fees. The prospect of having to pay one’s own costs may alone be enough to dissuade a person from continuing to engage in constitutionally protected speech. Further, the filing of a lawsuit, while a matter of course for attorneys, is a significant matter for private citizens. Cf. Bell v. School Bd. of City of Norfolk, 734 F.2d 155, 158 (4th Cir.1984) (Rosenn, J., concurring) (noting that a plaintiff who is “untutored in the niceties of the law” might feel threatened by a lawsuit in which no damages could be awarded “to the extent of being reluctant to speak quite as freely with the suit hanging over her head as she would have been without it”). A reasonable factfinder could conclude that the filing of the state court action, if in fact undertaken in retaliation for Shero’s criticism of city council members, was sufficient to “chill a person of ordinary fitness from continuing to engage in that activity,” thus satisfying the second prong.
Moreover, in concluding that the purpose of this declaratory judgment action was to declare the respective rights of the parties, the majority impermissibly resolves an issue of material fact regarding the third prong, the defendants’ intent in filing the action. Although the declaratory judgment action might have been nothing more than a good-faith attempt to resolve a controversy, this appeal is taken from a grant of summary judgment, and we must view the evidence in the light most favorable to Shero. Even in the absence of direct evidence of a retaliatory intent in the record, circumstantial evidence may very well support a finding that the defendants intended to retaliate and to dissuade Shero from speaking out against the city council. See Bloch v. Ribar, 156 F.3d 673, 682 (6th Cir.1998) (“[P]roof of an official’s retaliatory intent rarely will be supported by direct evidence of such intent.”).
For example, in her deposition, Grove’s city attorney, Dorothy Parker, explained why she had filed the action, stating that “Mr. Shero had begun calling attention to himself and to his complaints against the City.” Vol. Ill, ex. 16-E, at 83. She explained that in filing the action, she sought to “reduce ... some of the covert *1209 hostility that appeared to be simmering below the surface and was starting to bubble up based on the public expressions at the council meetings, public expressions on the street.” Id. She continued:
[Pjeople were being embarrassed because, number one, they were not drawing attention to themselves. Mr. Shero was seeking and getting attention. And it was. He was saying things. He was saying things about me that were not true. Absolutely he would say things at me that were just absolutely not true
I don’t know how Mr. Shero got all this media attention. But he was on the local radio. He was in the local papers. He managed to get an interview on television. And in these publicity events that he would have, he would make statements either about myself or about the City manager or about the elected officials that were not necessarily supported by fact. And it did cause embarrassment, because as soon as this case out, you know, our phones started ringing ...
And his comments to the press, his comments on the radio, his comments to the newspaper and his comments on the television. He just didn’t limit his comments to City Council meeting[s]. And all of these comments did result in embarrassment to the — to my client.
Id. at 84-87.
As Parker’s testimony indicates, Shero’s public comments had been a source of some consternation and embarrassment for city officials, and a factfinder could reasonably infer that the filing of the action was in retaliation for Shero’s criticism of city council members and other public commentary. That there is another, perfectly legal explanation for the filing of the lawsuit does not prevent Shero from recovering. “An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.” DeLoach v. Bevers, 922 F.2d 618, 620 (10th Cir.1990) (citation and quotation marks omitted).
Because there is evidence in the record that would support all three prongs of the test for retaliation, I would hold that the district court’s grant of summary judgment to the defendants on Shero’s retaliation claim was in error, and reverse.[2]

. The majority also addresses Shero's claim that the document denials and time limitation were in retaliation for his constitutionally-protected speech. Because these claims were not presented to the district court, I would not consider them for the same reasons stated above.

. The majority also affirms the district court’s dismissal of Shero’s claims against the individual defendants on the basis of qualified immunity, because it does not believe there has been any constitutional violation. I would also reverse this judgment as to the individuals involved in the retaliation claim against Shero. I think it is premature to grant qualified immunity by assuming the defendants' actions were not in retaliation for expressing protected speech.