MILTON B. FLORMAN and GERALDINE FLORMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Florman v. Commissioner
Docket No. 3139-78.
United States Tax Court
T.C. Memo 1979-254; 1979 Tax Ct. Memo LEXIS 269; 38 T.C.M. (CCH) 1018; T.C.M. (RIA) 79254; July 9, 1979, Filed Milton B. Florman, pro se. Arthur A. Oshiro, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Lehman C. Aarons, pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, as amended, and General Order No. 6 of this Court, 69 T.C. XV. [1] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. *270 OPINION OF SPECIAL TRIAL JUDGE AARONS, Special Trial Judge: Respondent determined a deficiency in petitioners' federal income tax for 1974 in the amount of $8,100.85. The only issue in this case is the deductibility under section 165 [2] of a claimed theft loss. FINDINGS OF FACT Many of the facts have been stipulated and are so found. Only those facts necessary for an understanding of this Opinion will be summarized below. At the time the petition was filed, petitioners resided in Beverly Hills, California. In their original joint return for 1974 petitioners claimed a theft loss in the amount of $13,200. On April 4, 1977, petitioners filed an amended return for 1974, claiming that their theft loss was $17,000. They claimed a $1683.78 refund resulting from the increased theft loss deduction and received this refund in October 1977. After further audit of both the original and amended 1974 returns respondent, in the notice of deficiency, disallowed the theft loss in toto. Milton B. Florman (hereinbelow referred to as "petitioner") is a Certified Public *271 Accountant and has practiced this profession in California since 1948. Petitioner and Robert Margolis had been good friends for around 20 years. In the fall of 1972, Robert Margolis (Margolis) advised petitioner of the organization of Marlee Electronics Corporation (Marlee) which would produce and sell "Entra Guard" security devices for apartment houses. The principal organizers of Marlee were Margolis and Lee Stein (Stein). On November 29, 1972, petitioner and Marlee (acting through Margolis as its president) executed an "Agreement to Purchase Stock." Petitioner was to buy 200 shares of stock at $10 per share and lend Marlee a total of $15,000 to be evidenced by Marlee's 6 percent promissory notes. Numerous representations to petitioner were made in that Agreement and also in conversations between Margolis and petitioner early in 1973, prior to the actual payment by petitioner for the Marlee stock and notes. Petitioner paid $9500 to Marlee in January 1973 (covering his stock purchase for $2000 and the first installment on his loans in the amount of $7500); he paid the remaining $7500 in loans to Marlee in May 1973. Later in 1973, petitioner was surprised by a request he *272 received from Marlee to agree to a subordination of his loan and to sign a guaranteed indemnification agreement. Prompted by this request petitioner began to review Marlee's financial statements and other documents. In 1974, as a result of such review, petitioner became convinced that a number of the representations which had been made to him in the stock purchase agreement and in conversations preceding the actual purchase and the actual loans had indeed been misrepresentations. Petitioner was convinced in 1974 that he had been defrauded. He was further convinced that Marlee became insolvent in 1974. Petitioner refrained from pursuing any legal remedy against Marlee, Margolis and other individuals involved until April 1977 at which time he filed a complaint in the Superior Court, Los Angeles County, against Margolis, Stein, Marlee and 20 "Does" for "fraud: intentional misrepresentation and concealment; rescission; damages: compensatory and punitive; promissory notes; attorney's fees." That lawsuit was still pending at the time of trial of this case. There was no showing of inability of the individual defendants to satisfy any judgment that might be rendered against them. As *273 of the time of trial of this case, Marlee was still operating (with Margolis as president), albeit continuing to experience financial losses. Marlee has not as of the time of trial paid interest or principal on its promissory notes held by stockholders. Petitioner had put off pursuing his legal remedies because of fears that instigating a criminal action might have subjected him to actions for false arrest or malicious prosecution and that a premature civil action might have subjected him to other types of counterclaims. In June 1977 petitioner sold his Marlee notes (in the face amount of $15,000) and granted an irrevocable proxy in connection with his 200 shares of Marlee stock, for the total sum of $19,000. He reported this sale as a capital gain, with a zero basis, on his 1977 returns. The purchaser of the notes (and grantee of the proxy) was TPT Distributing Corporation (TPT). TPT owned 50 percent of Marlee's outstanding stock, and with petitioner's proxy, would be able to control Marlee. OPINION We have deliberately refrained from detailing the voluminous evidence offered at the trial upon which petitioner relies as proof of the existence of a "theft" in 1974. For *274 purposes of this opinion we assume, without deciding, that a "theft" from petitioner did occur and that such theft was discovered in 1974, the taxable year at issue. That is petitioner's best position. He must nevertheless fail because we lack any basis for finding that petitioner had no reasonable prospect in 1974 of recovery of the alleged theft loss. This Court's opinion in Ramsay Scarlett & Co. v. Commissioner,61 T.C. 795 (1974), affd. 521 F.2d 786 (4th Cir. 1975), in a thoroughoing analysis, held that deductible theft losses must be evidenced by closed transactions. In so holding, the Court upheld the validity of Regs. § 1.165-1(d)(3), which provides: (3) Any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers the loss (see § 1.165-8, relating to theft losses). However, if in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonableprospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until the taxable year in which it can be ascertained with reasonable *275 certainty whether or not such reimbursement will be received. In sustaining this regulation the Court commented (pp. 811-812). A reasonable prospect of recovery exists when the taxpayer has bona fide claims for recoupment from third parties or otherwise, and when there is a substantial possibility that such claims will be decided in his favor. Scofield's Estate v. Commissioner, 266 F.2d at 159; Foundation Co., 14 T.C. at 1351, 1354. The standard for making this determination is an objective one, under which this Court must determine what was a "reasonable expectation" as of the close of the taxable year for which the deduction is claimed. Scofield's Estate v. Commissioner,supra at 163; Parmelee Transportation Co. v. United States,351 F.2d 619, 628 (Ct. Cl. 1965). The situation is not to be viewed through the eyes of the "incorrigible optimist," and hence, claims for recovery whose potential for success are remote or nebulous will not demand a postponement of the deduction. United States v. White Dental Co., 274 U.S. at 403; Scofield's Estate v. Commissioner,supra at 159. *276 The standard is to be applied by foreign, and hence, we do not look at facts whose existence and production for use in later proceedings was not reasonably foreseeable as of the close of the particular year. Nor does the fact of a future settlement or favorable judicial action on the claim control our determination, if we find that as of the close of the particular year, no reasonable prospect of recovery existed. Cf. Rainbow Inn, Inc. v. Commissioner,433 F.2d 640, 644 (C.A. 3, 1970). The fact that petitioner, in his 1977 sale of stock and grant of proxy to TPT, recovered more than the principal amount of his claimed 1974 loss is not in itself crucial to our holding here. We have diligently attempted to avoid the application of hindsight in arriving at a conclusion as to petitioner's prospect of recovery. But applying an objective standard as Ramsay Scarlett directs us to do (see 61 T.C. at p. 812), the fact remains that petitioner had a claim for reimbursement against Margolis, Stein, and others (none of whom was shown to be insolvent), which claim he chose not to pursue until 1977. If, as we are assuming, fraud amounting to a "theft, *277 " under California law [3] and under section 165 of the Code, was actually perpetrated by those individuals in 1972 and 1973 and was discovered in 1974, petitioner has failed to produce any objective proof that he would not have succeeded had he commenced his lawsuit in 1974. Petitioner's subjective fears of malicious prosecution and the like appear to us to go only to the question whether 1974 was indeed the year in which the assumed theft was discovered. Any doubt cast upon 1974 as the year of discovery cannot help petitioner's case. Accordingly, given the set of assumptions most favorable to petitioner, namely that fraud, amounting to theft, was perpetrated against him and that it was discovered in 1974, petitioner has failed to negate the fact that in 1974 he had a bona fide claim for reimbursement and that there was a substantial possibility that such claim would be decided in his favor. [4] Such negation was an essential factual component of petitioner's case, as to which he had the burden of proof. Welch v. Helvering,290 U.S. 111, 115 (1933). *278 Rule 142(a) of this Court's Rules of Practice and Procedure. We therefore hold that petitioner's theft loss-- assuming that there was a theft--did not become a closed transaction in 1974 and accordingly, that respondent's determination must be sustained. Decision will be entered for the respondent.
Footnotes
1. Pursuant to General Order No. 6 dated March 8, 1978, the post-trial procedures set forth in Rule 182 of this Court's Rules of Practice and Procedure are not applicable to this case.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
3. Cf. Norton v. Commissioner,333 F.2d 1005 (9th Cir. 1964), affg. 40 T.C. 500↩ (1963).
4. The instant case is distinguishable from McComb v. Commissioner,T.C. Memo. 1977-176↩, upon which petitioners rely, because of our finding that petitioners did have a reasonable prospect of recovery at the end of 1974.