**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 20 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ZAHIRUDEEN PREMJI; CAROL M. PREMJI,

Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

No. 96-9017
(T.C. No. 8372-94)
(United States Tax Court)

CARL JOHN NORBY,

Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

No. 96-9018
(T.C. No. 10353-94)
(United States Tax Court)

**ORDER AND JUDGMENT**[*]

Thomas G. Hodel of Doussard Hodel Markman & Wells, P.C., Lakewood, Colorado, for Petitioners-Appellants.

Karen D. Utiger (Gilbert S. Rothenberg with her on the brief), Department of Justice, Tax Division, Washington, D.C., for Respondent-Appellee.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **BALDOCK** and **BRORBY**, Circuit Judges, and **BROWN**, Senior District Judge.[**]

---

In these consolidated cases, Zahirudeen and Carol Premji, and Carl Norby appeal the Tax Court's decision denying their 1990 theft loss deductions for their investment losses in M&L Business Machine Company, Inc. ("M&L"). The taxpayers contend they are entitled to the deductions in 1990 because they discovered their losses in 1990 and had no reasonable prospect of recovery at the end of that year. ( *Id.* at 14-15.) We exercise jurisdiction pursuant to I.R.C. § 7482(a)(1) and affirm.

## BACKGROUND

*M&L Business Machine Company, Inc.*

The facts are largely undisputed. M&L was a closely held company formed to repair business equipment and office machines. In the 1980's, new owners used the company to operate a Ponzi scheme. As part of its Ponzi scheme, M&L solicited loans from investors by promising exceptionally high interest rates. Investors were told M&L would use their funds to acquire used business

---

[**] The Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, sitting by designation.

equipment for resale to foreign entities. However, no equipment was ever purchased. Instead, M&L used the funds to pay interest payments to earlier investors, while later investors often received nothing.

On October 1, 1990, M&L filed for bankruptcy. In its two sets of bankruptcy schedules filed in 1990, M&L's assets exceeded its liabilities. On October 4, 1990, M&L sent a letter to its investors explaining the Resolution Trust Corporation ("RTC") had taken over one of M&L's lenders, Capitol Federal Savings and Loan Association ("Capitol"), and refused to extend Capitol's line of credit to M&L for thirty days when a $15 million loan commitment to M&L from a European lender would materialize. Without the loan extension, M&L claimed it had no choice but to file for protection under Chapter 11 of the Bankruptcy Code. In a second letter sent to investors on October 30, 1990, M&L stated Manns Haggerskjold planned to buy out M&L's obligation to RTC, and consequently enable M&L to emerge from bankruptcy.

On December 3, 1990, the Colorado Securities Commissioner filed an *ex parte* motion to have a trustee appointed over M&L's business and property during bankruptcy. In its motion, the Colorado Securities Commissioner alleged: (1) M&L executed security interests in the same assets to more than one creditor;

(2) M&L supplied its bookkeeper with false check information, which when compared to actual checks, revealed M&L principals had siphoned off millions of dollars from M&L; (3) M&L misrepresented its financial statements had been prepared by a certified public accountant, Jonathon Williams; and (4) M&L misrepresented to its investors it had obtained a $15 million loan commitment and a bridge loan from Manns Haggerskjold. On December 10, 1990, the RTC joined the *ex parte* motion, also alleging fraud and gross mismanagement by M&L's principals.

As a result of the motions, the bankruptcy court appointed Ms. Christine J. Jobin, an experienced bankruptcy attorney, as trustee of M&L on December 18, 1990. In December 1990, after conducting her own investigation, Ms. Jobin concluded M&L was operating a check-kiting scheme. Despite the information gathered in her December 1990 investigation, including information that verified the Colorado Securities Commissioner's and RTC's allegations, Ms. Jobin was "hopeful" at the end of 1990 she would be able to reorganize M&L and provide a recovery for unsecured creditors.

However, on February 2, 1991, Ms. Jobin opened a box that was supposed to contain computer equipment, but contained only paving bricks covered with

hardened foam. She then concluded M&L operated a Ponzi scheme and had no inventory assets from which creditors' claims could be satisfied. On February 4, 1991, Ms. Jobin shut down the corporate offices. She shut down M&L's repair business in March 1991 after it became apparent the business was unprofitable.

After her discovery, Ms. Jobin considered lawsuits based on theories of preferential transfers and fraudulent conveyances to recover funds for M&L's creditors. In late 1992, [3] she sued the RTC, Bank of Boulder, and investors to recover payments made by M&L just prior to filing bankruptcy. By June 1995, Ms. Jobin recovered approximately $8.5 million for the bankruptcy estate and anticipated collecting a total of approximately $14 million. She was hopeful creditors would recover thirty per cent on their claims.

*The Taxpayers*

The Premjis invested a total of $58,000 in M&L in July, August, and September 1990. Mr. Norby invested $50,000 in M&L in September 1990 and $10,000 in early October 1990. Their investments were unsecured.

---

[3] Ms. Jobin was unable to file suit earlier because M&L's records had been removed from its offices, and were made available to her only after a search warrant was executed.

Mr. Norby testified he believed his investment was lost in 1990 after he learned of M&L's bankruptcy. He also testified he felt M&L representatives were lying to him and M&L's 1990 letters to its investors were suspicious. However, he contacted an M&L representative on an average of once a week, for the remainder of 1990, to confirm M&L had a valid bankruptcy filing and whether it was going to "make things right." On December 27, 1990, Mr. Norby reviewed M&L's bankruptcy file. From his review, Mr. Norby became aware of the RTC's and Colorado Securities Commissioner's allegations of gross mismanagement. Mr. Norby did not consult Ms. Jobin or another bankruptcy attorney in 1990 before determining his investment was lost.

Similar to Mr. Norby, Mr. Premji began to believe his investment was lost after he heard M&L filed for bankruptcy. He attended the first meeting of M&L's creditors in late November 1990 but was unable to review the file in 1990 as it had been checked out. Subsequent to the meeting and his discussion with another investor, Mr. Premji felt information that M&L provided him was inaccurate. Mr. Premji did not consult a bankruptcy attorney with respect to M&L in 1990. In February 1991, he met with an attorney, Andy Littman, to discuss the possibility of a lawsuit against the Bank of Boulder and other alternatives for recovery of his investment. He retained Mr. Littman's law firm in March 1991, and filed the

"Amazing Enterprises" [4] lawsuit in July 1991. As a result of the lawsuit, Mr. Premji recovered a portion of his investment in 1994.

On April 15, 1991, the Premjis filed a joint 1990 federal individual income tax return in which they claimed a $58,000 theft loss deduction related to their M&L investment. Mr. Norby claimed a $60,000 theft loss deduction for his M&L investment in his 1990 federal individual income tax return.

In 1994, the Premjis and Mr. Norby ("the taxpayers") received notices of deficiency disallowing their M&L theft losses because they had not established they sustained the losses in 1990. The taxpayers timely petitioned to the United States Tax Court to challenge the notices of deficiency.

After consolidating their cases for a bench trial, the Tax Court denied the taxpayers' 1990 theft losses because it found the taxpayers failed to prove they had no reasonable prospect of recovering their investment losses at the end of 1990. The taxpayers appeal.

---

[4] Plaintiffs in the Amazing Enterprises lawsuit alleged improper conduct by the Bank of Boulder in dealing with M&L's investors and in handling M&L's checks.

## DISCUSSION

Internal Revenue Code § 165(a) [5] allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." A theft loss "shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." I.R.C. § 165(e); Treas. Reg. §§ 1.165-1(d)(3), 1.165-8(a)(2). To be deductible under I.R.C. § 165, a "loss must be evidenced by closed and completed transactions, [and] fixed by identifiable events." Treas. Reg. § 1.165-1(b) and (d)(1). Therefore, if in the year of discovery there exists a claim for reimbursement that has a reasonable prospect of recovery, then the loss is not treated as sustained "until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement [of the loss] will be received." Treas. Reg. § 1.165-1(d)(3); *Jeppsen v. Commissioner*, 128 F.3d 1410, 1414 (10th Cir. 1997).

"'A reasonable prospect of recovery exists when the taxpayer has bona fide claims for recoupment from third parties or otherwise, and when there is a substantial possibility that such claims will be decided in his favor.'" *Jeppsen,*

---

[5] Unless otherwise stated, all Internal Revenue Code references are to the sections in effect for 1990.

128 F.3d at 1418 (quoting *Ramsay Scarlett & Co., Inc. v. Commissioner*, 61 T.C. 795, 811 (1974), *aff'd*, 521 F.2d 786 (4th Cir. 1975)). The taxpayer is not required to be an "incorrigible optimist," and claims with only remote or nebulous potential will not postpone the deduction. *United States v. S.S. White Dental Mfg. Co.*, 274 U.S. 398, 402-03 (1927); *Jeppsen*, 128 F.3d at 1418. Whether a reasonable prospect of recovery exists is determined by reviewing all facts and circumstances. Treas. Reg. § 1.165-1(d)(2). The standard is primarily an objective one, *Jeppsen* 128 F.3d at 1418-19, under which we must determine what was a "reasonable expectation" at the close of the taxable year in which the deduction is claimed. *Id.* at 1415. A taxpayer's subjective beliefs at the close of the taxable year are not to be ignored, but are not determinative in the court's determination. *Id.* at 1418. We apply the standard with foresight, therefore, we do not look at "facts not reasonably foreseeable as of the close of the pertinent tax year." *Id.* at 1416. We do not allow a later settlement or recovery on a claim to control our determination if at the end of the close of the taxable year in which the loss was discovered, no reasonable prospect of recovery existed. *Id.* at 1415-16 (ruling the ultimate disposition of a lawsuit may be noted but may not be considered relevant to the court's final decision). The taxpayer carries the burden of proving that a theft loss has in fact been sustained. Tax Court Rule 142(a); *Jeppsen,* 128 F.3d at 1418.

The taxpayers appeal the Tax Court's decision on the grounds they discovered their theft loss in 1990, and they did not have a claim for reimbursement for which there was a reasonable prospect of recovery in 1990. [6] We review Tax Court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." I.R.C. § 7482(a)(1). Whether a taxpayer has a reasonable prospect of recovery in a given year for income tax purposes is a question of fact we review under the "clearly erroneous" standard. *Jeppsen*, 128 F.3d at 1417. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *Jeppsen*, 128 F.3d at 1417 n.5. Since we conclude the Tax Court's finding the taxpayers failed to prove they had no reasonable prospect of recovery is not clearly erroneous, we do not address the discovery issue.

The Tax Court properly viewed the objective and subjective evidence existing at the end of 1990 in concluding the taxpayers failed to prove they had no reasonable prospect of recovery. These factual findings were amply supported by

_____

[6] The parties agreed the Premjis and Mr. Norby sustained theft losses, and such losses were incurred from transactions entered into for a profit.

evidence in the record. Since we are convinced no mistake has been committed by the Tax Cout, its findings are not clearly erroneous. As the Tax Court found, Ms. Jobin was hopeful [7] at the end of 1990 that she would continue to operate M&L and restructure its operations to recover assets for M&L's unsecured creditors. In 1990, M&L's bankruptcy schedules reflected its assets exceeded its liabilities. In addition, the facts ( *e.g.*, transfers made in 1990) which supported Ms. Jobin's lawsuits based on fraudulent conveyances and preferential transfers, existed at the end of 1990. [8] The law surrounding Ms. Jobin's lawsuits was not so uncertain as to conclude the prospects of recovery were remote or nebulous.

Despite Mr. Norby's subjective belief his investment was lost in 1990, the Tax Court found he never contacted Ms. Jobin or another bankruptcy attorney by the end of 1990 to ascertain his chances of recovery. We also note, contrary to Mr. Norby's beliefs, he contacted an M&L representative once a week through the

---

[7] Although the taxpayers contend Ms. Jobin testified she was "skeptical" anything would be recovered for investors, Ms. Jobin also stated twice during her testimony that she was hopeful she would recover some funds.

[8] As long as facts exist at the end of the year the loss is claimed and provide a reasonable prospect of recovery, it is irrelevant if the taxpayer had not uncovered the facts to prosecute legal action or chose to delay legal action. *See Qureshi v. Commissioner*, 53 T.C.M. (CCH) 414 (1098), *aff'd. without published opinion*, 843 F.2d 1388 (4th Cir.), and *cert. denied*, 488 U.S. 852 (1988); *Florman v. Commissioner*, 38 T.C.M. (CCH) 1018 (1979).

-11-

end of 1990 to see if M&L's bankruptcy filing was valid, and if M&L planned to "make things right." Consequently, we agree with the Tax Court, the record, viewed as a whole, does not support Mr. Norby's claim that as of 1990, he had no reasonable prospects of recovery.

As to Mr. Premji, he also did not consult a bankruptcy attorney in 1990 to determine his chances for recovery. Furthermore, although his lawsuit was filed in 1991, the Tax Court found the facts underlying the basis of the lawsuit existed in 1990. The Tax Court also considered the facts that Mr. Premji consulted Mr. Littman in February 1991, retained Mr. Littman's law firm in March and filed suit in July 1991. While these facts do not necessarily indicate Mr. Premji contemplated filing suit in 1990, the record nevertheless adequately supports the Tax Court's conclusion that Mr. Premji failed to meet his burden of proving he had no reasonable prospect of recovery in 1990. *See Jeppsen*, 128 F.3d at 1419 (allowing the court to consider the fact a taxpayer contemplates filing suit in the same tax year he discovers his loss in its determination whether a reasonable prospect of recovery existed). As we are convinced no mistake has been made, we conclude the Tax Court's finding is not clearly erroneous.

The taxpayers also claim the Tax Court erred by holding the taxpayers are

not entitled to *any* of their theft losses in 1990 after it held they had a reasonable prospect of recovering of *some* of their losses.  However, since the taxpayers raise this issue for the first time on appeal, we do not consider it.  *Tele-Communications, Inc. v. Commissioner*, 12 F.3d 1005, 1007 (10th Cir. 1993).

Accordingly, we **AFFIRM** the Tax Court's judgment denying the taxpayers' 1990 theft loss deductions.

**Entered for the Court**

**WADE BRORBY**
United States Circuit Judge