## JEFFERSON–PILOT CORPORATION AND SUBSIDIARIES, Petitioner–Appellee,

v.

## COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

No. 92–2054.

United States Court of Appeals, Fourth Circuit.

Argued March 1, 1993.

Decided June 14, 1993.

Bruce Raleigh Ellisen, Tax Div., U.S. Dept. of Justice, Washington, DC, argued (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen, Richard Farber, Bridget M. Rowan, on brief), for respondent-appellant.

Dean Francis Chatlain, Vice President and Tax Counsel, Jefferson–Pilot Corp., Greensboro, NC, argued (Peter H. Winslow, Scribner, Hall & Thompson, Washington, DC, on brief), for petitioner-appellee.

Before HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and VOORHEES, Chief United States District Judge for the Western District of North Carolina, sitting by designation.

## OPINION

BUTZNER, Senior Circuit Judge:

The principal question in this petition for review is whether the taxpayer, Jefferson–Pilot Corporation, can amortize the costs of acquiring Federal Communication Commission (FCC) broadcast licenses. The answer depends on whether an FCC license is a "franchise" within the meaning of § 1253 of the Internal Revenue Code, 26 U.S.C. § 1253. The Commissioner of Internal Revenue appeals the Tax Court's decision holding that three radio broadcasting licenses transferred to the taxpayer's subsidiary, Jefferson–Pilot Communications Co., are public franchises. Applying § 1253(d)(2)(A), the Tax Court permitted the taxpayer to amortize over ten years the cost of the broadcast

licenses, which its subsidiary obtained as part of its purchase of three radio stations in 1974.

We find no error in the Tax Court's analysis. The definition of "franchise" is sufficiently broad to include licenses issued by the FCC. We affirm for reasons adequately stated by the Tax Court in *Jefferson Pilot Corp. v. Commissioner*, 98 T.C. 435, 1992 WL 73091 (1992).

I

The taxpayer is a holding company, and with its subsidiaries it files a consolidated tax return. One of its subsidiaries, Jefferson–Pilot Communications Co. (J–P Communications), agreed in 1973 to purchase three radio stations from the Pacific & Southern Co. In order to operate radio stations lawfully, it is necessary to obtain a license from the FCC. 47 U.S.C. § 301. The FCC also requires that it approve any transfer of broadcast licenses. 47 U.S.C. § 310(d). J–P Communications filed an application with the FCC for assignment of Pacific & Southern's licenses to Jefferson–Pilot. In 1974, the FCC approved the assignment of the licenses, subject to certain conditions and payment of a transfer fee.

The Commissioner contends that the term "franchise" in § 1253 is ambiguous, thus necessitating resort to the statute's legislative history. According to the Commissioner, this history indicates that Congress intended § 1253 to apply only to commercial franchises, not government grants of licenses. The Commissioner points out that § 1253 was enacted to deal with controversies over whether the transfer of a commercial franchise was a sale or a license. *See* S.Rep. No. 91–552 at 208–11. The Commissioner also argues that an FCC license is not an agreement within the terms of § 1253 because the FCC's decision to grant the license does not arise from bargaining or for consideration.

The taxpayer contends that § 1253 permits it to amortize over ten years the portion of the radio stations' cost which was attributable to the FCC licenses.

II

Section 1253 of the Internal Revenue Code provides that the "transfer of a franchise, trademark, or trade name shall not be treated as a sale or exchange of a capital asset if the transferor retains any significant power, right, or continuing interest with respect to the subject matter of the franchise, trademark, or trade name." 26 U.S.C. § 1253(a). The statute defines "franchise" for the purposes of § 1253 as "includ[ing] an agreement which gives one of the parties to the agreement the right to distribute, sell, or provide goods, services, or facilities, within a specified area." 26 U.S.C. § 1253(b)(1).

First, a word of explanation is appropriate on a point which is not an issue in this proceeding. Section 1253(a) speaks of a "transfer" of a franchise in which the "transferor" retains any significant power or continuing interest in the subject of the franchise. Pacific & Southern Co. was the immediate transferor of the broadcast licenses to J–P Communications, but it retained no interest in the licenses. Pacific & Southern's lack of a retained interest, however, is of no moment. For the purpose of § 1253 the FCC is treated as the "transferor." *See* Rev.Rul. 88–24, 1988–1 C.B. 306. Moreover, it retained both power and a continuing interest in J–P Communications' acquisition and use of the broadcast licenses. *Jefferson–Pilot*, 98 T.C. at 440, 447–50. The Commissioner does not contest these aspects of the Tax Court's decision. Nor does the Commissioner dispute the valuation of the licenses. The critical question, then, is whether an FCC license is a franchise within the meaning of § 1253.

In concert with the Tax Court, we conclude that § 1253 is not ambiguous. "Franchise," it is true, has several meanings ranging from the right to vote to the right to do business conferred by the government. *See, e.g.,* Webster's Third New International Dictionary 902 (1986); Black's Law Dictionary 658 (6th ed. 1990). Nevertheless, Congress eliminated ambiguity by writing its own definition of "franchise" for the application of § 1253. The language of the statutory definition is plain. Consequently, our sole function is to apply it according to its terms. *See*

*West Virginia University Hospitals v. Casey,* 499 U.S. 83, ——, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991).

An FCC broadcast license satisfies the definition of franchise set forth in § 1253(b)(1). It is an agreement. J–P Communications agreed to operate the radio stations in the public interest according to FCC regulations in exchange for the FCC's consent to the transfer of the licenses from Pacific & Southern. The licenses give J–P Communications the right to provide broadcast services within specified areas that are delineated by particular broadcast frequencies.

Section 1253(e) excepts the transfer of professional sport franchises from the other provisions of § 1253. This specific exception lends weight to the taxpayer's position that the FCC licenses are not excepted from the plain language of the statute. As the Tax Court recognized, "[i]f Congress had wanted to exclude other franchises that fell within the definition contained in section 1253(b)(1), we believe that it would have so provided." *Jefferson–Pilot,* 98 T.C. at 442.

The Commissioner thoroughly canvassed the legislative history, but she found no express limitation of § 1253 to commercial franchises. The most that she could point to was Congress's concern about the confusion over the taxation of commercial franchises. But this is too slim a reed to support the Commissioner's argument that § 1253 pertains only to commercial franchises. The plain language of the statute precludes such a narrow interpretation.

Having satisfied all the requirements of § 1253, the taxpayer is entitled to amortize the cost of the licenses. The decision of the Tax Court is

*AFFIRMED.*