TELE–COMMUNICATIONS, INC., Petitioner–Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

No. 91–9010.

United States Court of Appeals, Tenth Circuit.

Dec. 27, 1993.

Bruce R. Ellisen, Attorney (Shirley D. Peterson, Asst. Atty. Gen., and Gary R. Allen and Richard Farber, Attorneys, with him on the briefs), Tax Div., Dept. of Justice, Washington, DC, for respondent-appellant.

Roger J. Jones (Arthur I. Gould, Joseph R. Goeke, William A. Schmalzl, and David A. Hyman with him on the brief), of Mayer,

Brown & Platt, Chicago, IL, for petitioner-appellee.

Before SEYMOUR and McWILLIAMS, Circuit Judges.*

SEYMOUR, Circuit Judge.

The Commissioner of Internal Revenue appeals a tax court decision holding that Tele-Communications, Inc. may amortize the cost of acquiring cable television franchises under I.R.C. § 1253. We affirm substantially on the basis of the tax court's opinion, *Tele-Communications, Inc. v. Commissioner*, 95 T.C. 495, 1990 WL 170429 (1990).

### I.

Tele-Communications is a cable television operator. TCI Cablevision Inc. is one of its wholly owned subsidiaries. We will refer to both companies jointly as taxpayer. In 1978, taxpayer bought the three cable systems involved in this case from Athena Cablevision. In order to construct and operate a cable television franchise, an operator must obtain permission from the local governmental unit. The local government grants this permission to the cable television system operator by enacting an ordinance that sets out the terms by which the system must be operated. The adoption of this type of ordinance by the local government and the acceptance of its terms by the cable systems operator is commonly referred to as a "franchise." The assets acquired by taxpayer in the transaction with Athena included the franchises permitting Athena to operate the cable systems.

The Commissioner contends that taxpayer cannot amortize the cost of acquiring these franchises under section 1253(d)(2) because cable television franchises granted by local governments are not "franchises" within the definition contained in section 1253(b)(1). At the tax court level, the Commissioner theorized that the legislative history of section

1253 indicates the term "franchise" was intended to refer only to private business franchises, and not to franchises granted by governmental bodies. The tax court rejected this argument, stating that the statutory definition of "franchise" is unambiguous and plainly encompasses the cable television franchises acquired by taxpayer. The court further found that the legislative history of section 1253 does not support the Commissioner's assertion that Congress intended the section to apply only to private business franchises. Accordingly, the court concluded that the taxpayer's cable television franchises constitute "franchises" for the purposes of section 1253, and that the taxpayer is therefore entitled to amortize their cost. On appeal, the government argues further that the taxpayer's franchises are not within the ambit of section 1253(b)(1) because as public franchises they are not "agreements" as required by the statute, but rather "rights" granted by local governments.

### II.

Section 1253 provides for the tax treatment of payments made and received in the transfer of franchises, trademarks, and trade names. Transferees may amortize payments for the acquisition of franchises under section 1253(d). Section 1253(b)(1) defines "franchise" for the purposes of the section: "The term 'franchise' includes an agreement which gives one of the parties to the agreement the right to distribute, sell, or provide goods, services, or facilities, within a specified area." I.R.C. § 1253(b)(1).

We agree with the tax court that this definition is unambiguous and that we need not look further than the plain language of the statute. The Fourth Circuit decided the same issue in a case involving the amortization of the costs of acquiring Federal Communication Commission broadcast licenses. *Jefferson–Pilot Corp. v. Commissioner*, 995 F.2d 530 (4th Cir.1993). In holding that the

---

* Honorable William J. Holloway, Jr., Circuit Judge, also heard oral argument but subsequent-ly recused.

broadcast licenses satisfied the definition of franchise set forth in section 1253(b)(1), the court stated, "[t]he language of the statutory definition is plain. Consequently, our sole function is to apply it according to its terms." *Id.* at 531.

■ We are similarly persuaded the tax court here correctly concluded that Congress did not exclude cable television franchises from its definition:

The conclusion that cable television franchises are included in the section 1253 definition of franchise is not unreasonable or plainly at variance with the policy of the legislation as a whole. This is especially true given the awareness of Congress of the cable television industry at the time the statute was fashioned, the conscious limitation of its application to "professional football, basketball, baseball, or other professional sport" in section 1253(e), and the otherwise broad definition of the term "franchise" itself.

*Tele–Communications, Inc.,* 95 T.C. at 508 (footnote omitted). The tax court also found, as did the Fourth Circuit in *Jefferson–Pilot,* 995 F.2d at 532, that even upon review of the legislative history, there is "no express limitation of § 1253 to commercial franchises." *Id.* at 532.

### III.

In this appeal, the Commissioner argues that the cable television franchises are not included under section 1253's definition of franchise because they are not "agreements" as required by the definition, but rights granted by local government. The Commissioner concedes that this theory was not raised nor addressed below. Reply Brief at 2.

■ The general rule is that an appellate court will not consider an issue raised for the first time on appeal. *Hicks v. Gates*

*Rubber Co.,* 928 F.2d 966, 970 (10th Cir. 1991). The Commissioner argues that the rule is not absolute and that an exception should be made in this case. Exceptions to the general rule are rare, however, and are "generally limited to cases where the jurisdiction of a court to hear a case is questioned, sovereign immunity is raised, or when the appellate court feels it must resolve a question of law to prevent a miscarriage of justice." *Id.; see also Farmers Ins. Co. v. Hubbard,* 869 F.2d 565, 570 (10th Cir.1989); *Stahmann Farms, Inc. v. United States,* 624 F.2d 958, 961 (10th Cir.1980). The policies behind the general rule and its narrow exceptions include respect for the lower court, unfair surprise to the other party, and the "need for finality in litigation and conservation of judicial resources." *Hicks,* 928 F.2d at 970–71.

■ It is within our discretion to decide on a case-by-case basis which questions to address for the first time on appeal. *Id.* at 970; *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). After reviewing the record in this case, we find no basis for an exception to the general rule. The Commissioner could have argued this theory to the tax court and states no reason why she did not. We therefore decline to decide whether the cable television franchises here are "agreements." [1]

The decision of the tax court is AFFIRMED.

---

1. We note that in *Jefferson–Pilot,* the Fourth Circuit addressed the same argument and concluded that FCC broadcast licenses are agreements within the meaning of section 1253(b)(1). 995 F.2d at 532.