149 T.C. No. 10

UNITED STATES TAX COURT

ROBERTA BORENSTEIN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23559-15.                    Filed August 30, 2017.

P's return for the taxable year 2012 was originally due on Apr. 15, 2013. She requested and received a six-month extension of time to file that return. By virtue of that extension the due date for filing her 2012 return was Oct. 15, 2013.

P made tax payments for 2012 totaling $112,000. All of these payments were deemed made on Apr. 15, 2013. See I.R.C. sec. 6513. P did not file a return for 2012 by Oct. 15, 2013, or during the ensuing 22 months.

On June 19, 2015, R issued P a notice of deficiency for 2012. On Aug. 29, 2015, shortly before filing her petition, P submitted a delinquent return for 2012 that reported a tax liability of $79,559. P and R agree that P for 2012 has a deficiency of $79,559 and an overpayment of $32,441.

R contends that P is not entitled under I.R.C. sec. 6511(a) and (b)(2)(B) to a credit or refund of this overpayment because her tax

payments were made outside the applicable "lookback" period keyed to the date on which the notice of deficiency was mailed. P contends that she is eligible for the three-year lookback period specified in the final sentence of I.R.C. sec. 6512(b)(3) and that she is entitled to a refund of $32,441 under that provision.

1. Held: P is not eligible for the three-year lookback period specified in the final sentence of I.R.C. sec. 6512(b)(3) because the notice of deficiency was not mailed to her "during the third year after the due date (with extensions) for filing the return of tax."

2. Held, further, P did not file her 2012 income tax return before the notice of deficiency was issued and did not pay her tax liability within two years of the mailing of the notice of deficiency. This Court therefore lacks jurisdiction to award a refund or credit of P's $32,441 overpayment for 2012.

Kendall C. Jones and Joseph M. DePew, for petitioner.[*]

Bartholomew Cirenza and William J. Gregg, for respondent.

---

[*]A memorandum amici curiae was filed by T. Keith Fogg and W. Edward Afield as attorneys for the Philip C. Cook Low-Income Taxpayer Clinic and the Harvard Federal Tax Clinic.

OPINION

LAUBER, <u>Judge</u>:  The parties submitted this case for decision without trial under Rule 122.[1]  In a stipulation of settled issues they have agreed that petitioner has a deficiency of $79,559 for the taxable year 2012 and an overpayment of $32,441.  The question remaining for decision is whether we have jurisdiction to determine a refund or credit of this overpayment.

Section 6512(b)(1) grants this Court jurisdiction to determine an overpayment for a year for which the Court has also determined a deficiency (or has decided that there is no deficiency).  However, section 6512(b)(3) places a limit on the amount of credit or refund that may be allowed.  That limit is determined by the amount of tax that was paid during one of three "lookback" periods from the date on which the notice of deficiency was mailed.

The question we must decide is whether petitioner, who did not file a timely return, is limited to the two-year lookback period in section 6511(a) and (b)(2)(B) or instead is eligible for the three-year lookback period specified in the final sentence of section 6512(b)(3).  Although we are sympathetic to petitioner's position,

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

we are unable to conclude that her situation falls within the scope of that provision when we construe it according to its plain meaning. We accordingly have no alternative but to hold that she is not entitled to a refund or credit of the stipulated overpayment of $32,441.

## Background

There is no dispute as to the following facts, which are drawn from the parties' stipulation of settled issues, stipulation of facts, and attached exhibits. Petitioner resided in Connecticut when she filed her petition.

Petitioner's Federal income tax return for 2012 was originally due for filing on April 15, 2013. On that date she secured a six-month extension of time to file that return. See sec. 6081(a). By virtue of that extension the due date for her 2012 return was October 15, 2013.

As of January 17, 2013, petitioner had made toward her expected 2012 tax liability estimated tax payments aggregating $72,000. She enclosed an additional payment of $40,000 with her extension request. Thus, as of April 15, 2013, her tax payments for 2012 totaled $112,000. That total amount was deemed paid on April 15, 2013. See sec. 6513. Petitioner made no subsequent payments toward her 2012 tax liability.

Petitioner did not file a return for 2012 by the October 15, 2013, due date or during the ensuing 22 months. On June 19, 2015, the Internal Revenue Service (IRS or respondent) sent her a timely notice of deficiency that determined a deficiency of $1,666,463 and additions to tax under sections 6651(a)(1) and (2) and 6654. The bulk of the omitted income generating this deficiency stemmed from gross proceeds from securities sales. On September 16, 2015, she timely petitioned this Court.

Shortly before filing her petition, petitioner submitted to the IRS Philadelphia, Pennsylvania, Service Center a delinquent return for 2012. This return, filed on August 29, 2015, reported an income tax liability of $79,559, which the parties agree is correct. Because petitioner did not submit this return until after the notice of deficiency was issued, her deficiency for 2012 is $79,559. The parties agree that she is not liable for additions to tax under section 6651(a)(1) or (2) but that she is liable for a $247 addition to tax under section 6654.

The return petitioner filed on August 29, 2015, reported an overpayment of $38,447. At no time before filing that return had petitioner submitted a claim for refund of any portion of this overpayment. The parties have since stipulated that petitioner's correct overpayment for 2012 is $32,441, viz., $112,000 in total pay-

ments minus the $79,559 tax liability.  The question we must decide is whether petitioner is entitled to a credit or refund of this overpayment.

## Discussion

The taxpayer bears the burden of proving her entitlement to a refund or credit.  Rule 142(a)(1); Butts v. Commissioner, T.C. Memo. 2015-74, 109 T.C.M. (CCH) 1392, 1393.  Petitioners do not contend that the burden of proof should shift to respondent under section 7491.  In any event, because the question presented is solely one of law, the burden of proof is irrelevant.  See, e.g., Nis Family Tr. v. Commissioner, 115 T.C. 523, 538 (2000).

## I.    Governing Statutory Framework

Once this Court has jurisdiction over a deficiency case, section 6512(b)(1) provides that, if the Court "finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the * * * Court shall have jurisdiction to determine the amount of such overpayment."  In that event, the "amount * * * [of the overpayment] shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer."  Ibid.

The general rule set forth above is subject to the proviso in section 6512(b)(3), captioned "Limit on amount of credit or refund."  As the Supreme Court noted when interpreting this provision 20 years ago, the statutory scheme is

"not elegant" but is arguably "straightforward." <u>Commissioner v. Lundy</u>, 516 U.S.
235, 242 (1996). Section 6512(b)(3) provides that "[n]o such credit or refund
shall be allowed or made of any portion of the tax unless the Tax Court determines
as part of its decision that such portion was paid" within one of three specified
time periods. The parties agree that the time period relevant here is set forth in
section 6512(b)(3)(B).[2]

Subparagraph (B) refers to tax paid "within the period which would be ap-
plicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the
notice of deficiency a claim had been filed (whether or not filed) stating the
grounds upon which the Tax Court finds that there is an overpayment."[3] Section

---

[2]Section 6512(b)(3)(A) is inapplicable here because it refers to tax paid
"after the mailing of the notice of deficiency." Petitioner paid the tax at issue on
April 15, 2013, more than two years before the notice of deficiency was mailed.
Section 6512(b)(3)(C) is likewise inapplicable because it refers to tax paid within
the limitations period for a claim for refund filed "before the date of the mailing of
the notice of deficiency." Petitioner's only "claim for refund" took the form of her
delinquent 2012 return, which was submitted on August 29, 2015, more than two
months after the mailing of the notice of deficiency on June 19, 2015.

[3]The filing of a return reporting an overpayment generally constitutes the
filing of a claim for refund. <u>McGregor v. United States</u>, 225 Ct. Cl. 566, 566
(1980); sec. 301.6402-3(a)(1), Proced. & Admin. Regs. But the converse is not
true for the deemed claim for refund under section 6512(b)(3)(B); that deemed
claim does not constitute a deemed return. <u>Lundy</u>, 516 U.S. at 248-250. As a
result, section 6512(b)(3)(B) does not "incorporate[] a uniform 3-year look-back
period for Tax Court cases[.]" <u>Id.</u> at 248.

6511(c) and (d) sets forth special rules that have no application to this case.[4] The parties accordingly agree that, as relevant here, subparagraph (B) incorporates the lookback periods of section 6511(b)(2).

Section 6511(b)(2) "provides for two alternative lookback periods: a three-year period and a two-year period." Butts, 109 T.C.M. (CCH) at 1394-1395; see sec. 6511(b)(2)(A) and (B). As the Supreme Court has explained, the statute "directs the Tax Court to determine the applicable period by inquiring into the timeliness of a hypothetical claim for refund filed 'on the date of the mailing of the notice of deficiency.'" Lundy, 516 U.S. at 242 (quoting section 6512(b)(3)(B)); see Butts, 109 T.C.M. (CCH) at 1394.

Section 6511(b)(2)(A) defines the applicable lookback period where a refund claim was filed "within 3 years from the time the return was filed." Sec. 6511(a) (cross-referenced in section 6511(b)(2)(A)). Here, the hypothetical refund claim is deemed to have been filed on June 19, 2015 (when the notice of deficiency was mailed), and petitioner's delinquent 2012 return was filed two months later, on August 29, 2015. Because the hypothetical refund claim was filed before the tax return, it was not filed "within 3 years from the time the return was filed"

---

[4]Section 6511(c) governs situations where the period of limitations has been extended by agreement. Section 6511(d) sets forth special rules for (among other things) bad debt losses, net operating losses, and foreign tax credits.

as section 6511(b)(2)(A) requires. See Lundy, 516 U.S. at 243. This will often be the result in the case of nonfilers: Like petitioner here, they frequently will not have filed a return (if at all) until after a notice of deficiency was mailed to them.

Where the lookback period in section 6511(b)(2)(A) does not apply, the applicable lookback period is that specified in section 6511(b)(2)(B): "If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim."

Petitioner's hypothetical refund claim is deemed to have been filed on June 19, 2015, and she made her $112,000 tax payment on April 15, 2013, more than two years previously. Because no portion of the tax was paid within the two-year lookback period prescribed by section 6511(b)(2)(B), no credit or refund would be allowable for petitioner's $32,411 overpayment under section 6512(b)(3)(B) as interpreted by the Supreme Court in Lundy. See Lundy, 516 U.S. at 243 (holding that, in the case of a nonfiler, "the proper application of section 6512(b)(3)(B) * * * requires that a 2-year look-back period be applied").

In response to the Supreme Court's decision in Lundy, Congress amended section 6512(b)(3). See Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 1282(a) and (b), 111 Stat. at 1037-1038. This amendment "essentially overturned

Lundy," Brosi v. Commissioner, 120 T.C. 5, 9 (2003), and provided a three-year rather than a two-year lookback period in certain circumstances where no return had been timely filed, see Butts, 109 T.C.M. (CCH) at 1395 n.7. This amendment is codified in the final sentence of section 6512(b)(3) as follows:

> In a case described in subparagraph (B) where the date of the mailing of the notice of deficiency is during the third year after the due date (with extensions) for filing the return of tax and no return was filed before such date, the applicable period under subsections (a) and (b)(2) of section 6511 shall be 3 years.

Congress made this amendment effective for taxable years that ended after August 5, 1997. See Brosi, 120 T.C. at 9. It is this provision upon which petitioner relies in contending that she is entitled to a three-year lookback period, which would yield a refund of her $32,411 overpayment. We turn now to the proper construction of this provision.

II. Analysis

A. Respondent's Position

Respondent offers what he believes to be a "plain language" interpretation of the final sentence of section 6512(b)(3). In his view, the parenthetical phrase "with extensions" modifies "due date." Here, the "due date (with extensions) for filing the return of tax" was October 15, 2013, pursuant to the automatic extension petitioner received to file her 2012 return.

The "third year" after that date began on October 15, 2015. But the notice of deficiency was mailed on June 19, 2015. That date was during the second year, not during the third year, "after the due date (with extensions) for filing the return," as the 1997 amendment requires. Respondent accordingly contends that the exception set forth in the final sentence of section 6512(b)(3) does not apply, with the result that a refund or credit of petitioner's $32,411 overpayment is barred by the two-year lookback rule generally applicable to nonfilers.

This case is one of first impression because it is the first time this Court has been called upon to interpret the final sentence of section 6512(b)(3) as applied to the fact pattern presented here.[5] However, statements in our prior cases support (or are at least consistent with) respondent's position that the parenthetical phrase "with extensions" modifies "due date," the immediately preceding noun.

In Petty v. Commissioner, T.C. Memo. 2010-63, 99 T.C.M. (CCH) 1248, the taxpayer received a four-month extension of time, until August 15, 2005, to file her 2004 return. She never filed a return, and the IRS sent her a notice of de-

_____

[5]The fact pattern presented here--i.e., where the notice of deficiency was mailed to a nonfiling taxpayer during the second year after the extended due date for filing the return--was before the Court in Healer v. Commissioner, 115 T.C. 316 (2000). However, the statutory amendment we are considering did not apply in that case because it involved a 1996 calendar taxable year. Brosi, 120 T.C. at 9 (noting that this amendment was effective for taxable years ending after August 5, 1997); see Healer, 115 T.C. at 321.

ficiency on August 11, 2008. Interpreting the final sentence of section 6512(b)(3) as added by Congress in 1997, we held that a three-year lookback period applied because the notice of deficiency was mailed during the third year after the extended due date for filing petitioner's 2004 return:

> The due date for filing petitioner's tax return was August 15, 2005. Because the notice of deficiency was mailed in the third year after the due date (with extensions) for filing the tax return, the applicable period during which an overpayment may be refunded under sections 6512(b)(3)(B) and 6511(b)(2) is 3 years from the date * * * [on which the notice of deficiency was mailed]. See sec. 6512(b)(3) (flush language) * * * [Id., 99 T.C.M. (CCH) at 1249.]

On two other occasions we have interpreted the final sentence of section 6512(b)(3) as applied to taxpayers who did not secure extensions of time to file. See Zarky v. Commissioner, 123 T.C. 132, 134 n.2, 135 (2004); Butts, supra. Dicta in these cases appear consistent with respondent's position that the parenthetical

phrase "with extensions" modifies "due date."[6]  We have discovered no prior opinion of this Court or of any other court that suggests anything to the contrary.[7]

B.     Petitioner's Position

Petitioner and amici curiae urge us to reject respondent's interpretation of the statute.  Although they advance a variety of arguments, they begin with a practical observation, which is best illustrated by a series of hypotheticals.

Petitioner paid her 2012 tax on April 15, 2013.  If the notice of deficiency had been mailed between that date and April 15, 2015, she would be allowed a refund under the two-year lookback rule in sections 6512(b)(3)(B) and 6511(b)(2)(B).  If the notice of deficiency had been mailed between October 15,

---

[6]In Zarky, we simply noted that, under the final sentence of section 6512(b)(3), "the * * * notice of deficiency must have been mailed to * * * [the taxpayer] during the third year after the due date" for filing his return.  123 T.C. at 135.  In Butts, T.C. Memo. 2015-74, the IRS mailed the notices of deficiency on June 13, 2011, during the fourth year after the original due date of the return.  We held that the taxpayers did not qualify for a three-year lookback period, noting: "The due date for petitioners' 2007 tax return was April 15, 2008, * * * and no facts in the record indicate that petitioners sought or obtained a filing extension." Id. at 1395 n.7.

[7]Amici curiae rely heavily on Krape v. Commissioner, T.C. Memo. 2007-125, 93 T.C.M. (CCH) 1239, but that case did not involve the 1997 statutory amendment at issue here.  The taxpayer there filed a delinquent return before the IRS mailed him a notice of deficiency, so the final sentence of section 6512(b)(3) could not possibly have applied.  Rather, the Court in Krape was applying the general lookback rules of sections 6511(b)(2) and 6512(b)(3)(B).

2015, and April 15, 2016, she would be allowed a refund under the three-year lookback rule in the final sentence of section 6512(b)(3) as construed by respondent. That is because the notice of deficiency would then have been mailed "during the third year after the due date (with extensions) for filing the return." Sec. 6512(b)(3).

But if the notice of deficiency was mailed between April 16 and October 15, 2015--i.e., during the second half of the second year after the extended due date, as was true here--we would be unable to allow a refund under respondent's construction of the statute. The result, according to petitioner, would be "a six-month black hole period into which tax refunds disappear when a nonfiling taxpayer secures an extension of time to file." According to amici curiae: "The idea that the Tax Court should somehow be stripped of contiguous jurisdiction to issue refunds is unreasonable, unsound and incongruous."[8]

The arguments that petitioner and amici curiae advance against this result begin (as they must) with the text of the statute. "[T]he starting point for interpret-

_____

[8]If the notice of deficiency had been mailed between April 16 and October 15, 2016, the final sentence of section 6512(b)(3) as construed by respondent would apply to petitioner. But because all of her 2012 tax payments were deemed made on April 15, 2013, they would lie beyond the three-year lookback period specified in the final sentence of section 6512(b)(3). Thus, none of her payments would be eligible for refund. See infra pp. 26-27.

ing a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). "When the words of a statute are unambiguous * * * 'judicial inquiry is complete.'" Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) (quoting Rubin v. United States, 449 U.S. 424, 430 (1981)). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says." Id. at 253-254.

Petitioner's textual argument focuses on the parenthetical "(with extensions)" as it appears in the longer phrase, "during the third year after the due date (with extensions) for filing the return of tax." Respondent contends that this parenthetical phrase modifies "due date," the immediately preceding noun. Petitioner contends that "with extensions" should be taken instead to modify "the third year," a noun phrase that appears earlier in the sentence. In that event, "the third year" would be determined by reference to the original due date for her return and would be prolonged to include the six-month extension period. Alternatively, petitioner contends that "with extensions" should be taken to modify "3 years," the last two words in the sentence. In that event, section 6512(b)(3) would afford

taxpayers a maximum lookback period, not of three years, but of 3-1/2 years. Under either of these interpretations petitioner would get her refund.

We find neither of these constructions plausible from the standpoint of normal English syntax. A modifying phrase is normally read to modify the nearest plausible antecedent. This rule is typically referred to as the "last antecedent" rule. See, e.g., Barnhart v. Thomas, 540 U.S. 20, 26 (2003) ("[A] limiting clause or phrase * * * should ordinarily be read as modifying only the noun or phrase that it immediately follows[.]"); Lloyd v. J.P. Morgan Chase & Co., 791 F.3d 265, 271 (2d Cir. 2015); United States v. Lockhart, 749 F.3d 148, 152 (2d Cir. 2014); United States v. Kerley, 416 F.3d 176, 180 (2d Cir. 2005); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 144 (2012).

This rule of construction, we think, is especially powerful when the modifying phrase is embedded within a longer grammatical unit that has a familiar meaning or is a term of art. Here, "with extensions" is embedded within the phrase "due date * * * for filing the return of tax." Phrases similar to this appear throughout the Code. See, e.g., sec. 172(b)(3) (providing that an election shall be made "by the due date (including extensions of time) for filing the taxpayer's return"); sec. 408A(d)(7) ("[T]he due date * * * is the date prescribed by law (including extensions of time) for filing the taxpayer's return[.]"). In this tax context, it

seems clear that the phrase "with extensions" must modify "due date" and must refer to extensions of time "for filing the return of tax."

Wholly apart from sentence structure, construing "with extensions" to modify "due date" results in a more logical and natural reading. Congress knows that due dates for filing tax returns can be extended; "with extensions" is thus read quite naturally to modify "due date." Years, on the other hand, do not have "extensions"; they cannot be extended but invariably end 12 months after they begin. Congress is thus unlikely to have intended "with extensions" to modify "3 years" or "the third year."

In a similar vein, amici curiae urge that we consult the dictionary to learn that the preposition "with" has among its accepted meanings "inclusive of." But unless the parenthetical phrase is read to modify something other than "due date," making this substitution does not help petitioner. The "due date (inclusive of extensions) for filing the return of tax" was October 15, 2013--the same date produced by respondent's construction of the statute. In effect, amici curiae argue that we should view "inclusive of" as modifying the gestalt of the entire sentence, i.e., the sentence should be read generously to be "inclusive of" taxpayers like petitioner. That is not how prepositions work.

Alternatively, petitioner contends that we should interpret the final sentence of section 6512(b)(3) "in conjunction with" section 6511(b)(2)(A). The latter provision refers to tax paid within "the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." In petitioner's words, the lookback period under this provision "is three years plus the period of any extension of time (i.e., the extension is tacked on to the normal three-year period)." Petitioner urges that we should construe the final sentence of section 6512(b)(3) the same way, i.e., "to add the extension period to the end of the lookback period when the notice of deficiency is issued in the third year after the initial due date of the return."

We find this argument unpersuasive. First, it is just a different way of stating petitioner's threshold argument, namely, that the parenthetical phrase "with extensions" does not modify "due date," the immediately preceding noun, but rather modifies "3 years," a noun phrase that appears at the end of the sentence after 27 intervening words. We have rejected that argument for the reasons previously stated.

Second, petitioner's argument ignores a significant difference in how the two statutory provisions are drafted. In section 6511(b)(2) Congress prescribed a variable lookback period and defined it as "equal to 3 years plus the period of any

extension of time for filing the return." In the final sentence of section 6512(b)(3), by contrast, Congress prescribed a fixed lookback period ("3 years") and provided that this lookback period would apply if the IRS issued the notice of deficiency during a specified 12-month window of time, namely, "during the third year." The starting date for that "third year" is to be determined by reference to "the due date (with extensions) for filing the return of tax." There is no textual justification in the final sentence of section 6512(b)(3) for interpreting "with extensions" as expanding a time period as opposed to defining a commencement date.[9]

Third, creating a lookback period of 3-1/2 years, as petitioner urges, is at odds with the legislative history. Section 6511(b)(2) has always provided alternative lookback periods, set forth in paragraphs (A) and (B), respectively. And section 6512(b)(3)(B) has always incorporated those two alternative periods by reference. In acting to overturn Lundy, which had applied the two-year lookback period of section 6511(b)(2)(B), Congress opted for a fixed three-year lookback period. See H.R. Rept. No. 105-148, at 608 (1997), 1997-4 C.B. (Vol. 1) 319, 930

_____

[9]The reference in the final sentence of section 6512(b)(3) to "the applicable period under subsections (a) and (b)(2) of section 6511" is clearly a reference to the lookback period under section 6511(b)(2) and not the limitations period under section 6511(a). See Lundy, 516 U.S. at 240 (holding that the "restrictions [of section 6512(b)(3)] governing the Tax Court's authority to award a refund of overpaid taxes incorporate only the look-back period and not the filing deadline from § 6511").

(stating that the 1997 amendment was designed to provide that "the 3-year 'look back' rule" rather than "the 2-year 'look back' rule" should apply). There is no evidence that Congress intended to create a lookback period of up to 42 months.[10]

Petitioner next contends that her interpretation, even if problematic on the "plain meaning" front, is supported by the statute's legislative history. Statutory text is ambiguous where "the ordinary and common meaning of the statutory language supports more than one interpretation." Carlson v. Commissioner, 116 T.C. 87, 93 (2001). Where "statutory language is ambiguous * * * we may consult legislative history to assist us in interpreting the language in question." Ibid.

We do not find the statutory text at issue to be "ambiguous." The phrase "due date (with extensions) for filing the return of tax" does not have two possible

---

[10]Two other principles caution against embracing the countertextual interpretation that petitioner and amici curiae urge. First, as the Supreme Court noted in Lundy, 516 U.S. at 242, this Court's ability to allow refunds of overpayments was codified by Congress as a limit on our jurisdiction. See sec. 6512(b)(1), (2), and (3). As a court of limited jurisdiction, "we may exercise jurisdiction only to the extent expressly authorized by Congress." Greene-Thapedi v. Commissioner, 126 T.C. 1, 6 (2006) (declining to extend our collection due process jurisdiction to determine overpayments or order credits or refunds). Second, by amending section 6512(b)(3) in 1997 to permit more liberal credit and refund of taxes paid, Congress was to that extent enacting a waiver of sovereign immunity. Such waivers generally are strictly construed. Sossamon v. Texas, 563 U.S. 277, 285 (2011) ("[A] waiver of sovereign immunity 'will be strictly construed, in terms of its scope, in favor of the sovereign.'" (quoting Lane v. Peña, 518 U.S. 187, 192 (1996))).

meanings. Rather, we find it to have a single unambiguous meaning when construed in accordance with the ordinary language that Congress employed. Petitioner seeks to inject ambiguity into this statute by positing that "with extensions" modifies other words that appear earlier or later in the sentence. But because this interpretation does violence to the rules of ordinary English syntax, it does not create an "ambiguity."

In any event, the legislative history does not have the force that petitioner attributes to it. Congress in 1997 added a new final sentence to section 6512(b)(3) for the express purpose of overturning the Supreme Court's construction of section 6512(b)(3)(B) in Lundy. "By amending the statute," petitioner says, "Congress intended to treat all nonfiling taxpayers with overpayments the same during the three-year period following the initial due dates of their returns." Under respondent's "plain meaning' interpretation of the statute, however, "nonfilers are treated differently depending on whether or not a filing extension was secured." Amici curiae argue that "this result contradicts the congressional intent to 'eliminate disparate treatment' of taxpayers."

The legislative history does not have the specificity or establish the breadth of purpose that petitioner asserts, and we find the legislative history insufficient to countermand the plain meaning of the words Congress enacted. In proposing the

1997 amendment the House report contrasted a taxpayer who does not file a return before a notice of deficiency is issued with an identical taxpayer who files a return by the date the notice is issued.  H.R. Rept. No. 105-148, supra at 608, 1997-4 C.B. (Vol. 1) at 930.  Under Lundy, the former taxpayer would be subject to a two-year lookback period, while the latter would generally benefit from a three-year lookback period.  The report stated, as the only express justification for the amendment, that "[t]he Committee believes that it is appropriate to eliminate this disparate treatment."  Ibid.

Contrary to petitioner's view, this legislative history does not establish congressional intent that all nonfilers be treated identically "during the three-year period following the initial due dates of their returns."  Nor does it establish intent that all nonfilers be treated the same, without regard to whether they secured extensions of time to file.  It is true that the taxpayer in Lundy had not obtained an extension of time to file, and the legislative history nowhere mentions extensions of time to file.  But this does not mean, as petitioner urges, that "the final flush language of section 6512(b)(3) should be interpreted so as to not inject filing extensions into the lookback period mechanism."  Quite the contrary:  Since Con-

gress placed the phrase "with extensions" immediately after "due date," Congress itself "injected filing extensions into the lookback period mechanism."[11]

Finally, if we reject petitioner's textual arguments and interpret the last sentence of section 6512(b)(3) according to the plain meaning urged by respondent, petitioner contends that the statute would produce an "absurd" result. The "anti-absurdity" canon of construction dates back many years. See Rector of Holy Trinity Church v. United States, 143 U.S. 457, 460 (1892) ("If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity."); Scalia & Garner, supra, at 234-239 ("A provision may be either disregarded or judicially corrected as an error * * * if failing to do so would result in a disposition that no reasonable person could approve."); 2A Sutherland Statutes and Statutory Construction, sec. 46:1 (7th ed.).

The "anti-absurdity" canon, while of ancient pedigree, is invoked by courts nowadays quite rarely. In order for a party to show that a "plain meaning" construction of a statute would render it "absurd," the party must show that the result

---

[11]The Supreme Court in Lundy disregarded a fair body of legislative history arguably supporting a result opposite to that which it reached. See 516 U.S. at 253-263 (Thomas, J., dissenting). Instead, the majority believed itself "bound by the terms Congress chose to use when it drafted the statute." Id. at 249. Like the majority in Lundy, we think it appropriate to construe section 6512(b)(3) according to the plain language that Congress employed.

would be "so gross as to shock the general moral or common sense." Crooks v.

Harrelson, 282 U.S. 55, 60 (1930); see Tele-Commc'ns, Inc. & Subs. v. Commis-

sioner, 95 T.C. 495, 507 (1990) (citing Harrelson as supplying the relevant stan-

dard but upholding the plain language construction of the statute), aff'd, 12 F.3d

1005 (10th Cir. 1993).

There are very few Supreme Court cases in which the "anti-absurdity" doc-

trine arguably played a significant role. In Green v. Bock Laundry Mach. Co., 490

U.S. 504 (1989), the Court declined to construe a Federal Rule of Evidence ac-

cording to its plain language, finding that language ambiguous and concluding

that a "literal reading would compel an odd result." Id. at 509. But another canon

of construction was also relevant there, namely, that a statute, regulation, or rule

should be construed to avoid constitutional problems. See id. at 527 (Scalia, J.,

concurring) (noting that the rule at issue, "if interpreted literally, produces an ab-

surd, and perhaps unconstitutional, result"); see also NLRB v. Catholic Bishop of

Chi., 440 U.S. 490, 500 (1979) ("[A]n Act of Congress ought not be construed to

violate the Constitution if any other possible construction remains available."); 2A

Sutherland Statutes and Statutory Construction, sec. 45:11 (7th ed.).[12]

---

[12]Other Supreme Court cases have discussed, though not literally invoked, the "anti-absurdity" doctrine when construing statutes to avoid potentially uncon-

(continued...)

In the absence of constitutional concerns, the Supreme Court in recent decades has consistently held that, unless a statute has "conflicting provisions or ambiguous language," the court's "role is to interpret the language of the statute enacted by Congress." Barnhart v. Sigmon Coal Co., 534 U.S. 438, 461 (2002). Indeed, the Court has rejected challenges to statutes that have linguistically sound readings even though the result on substantive grounds may have struck some observers as odd. See, e.g., Dodd v. United States, 545 U.S. 353 (2005) (holding that the statute of limitations for collateral attacks on criminal convictions may expire before the decision supporting the challenge became applicable).

Although a plain-language interpretation of the final sentence of section 6512(b)(3) produces an odd result in certain factual circumstances, it does not render the operation of the statutory amendment as a whole "absurd." The 1997 amendment fully achieves Congress' remedial purpose for all taxpayers who do not seek extensions of time to file their returns. For taxpayers who obtain extensions of time to file and do file their returns, the amendment works no disadvantage. And for taxpayers who obtain extensions of time to file, but neglect to file,

---

[12](...continued)
stitutional outcomes. See, e.g., United States v. X-Citement Video, Inc., 513 U.S. 64 (1994); Pub. Citizen v. U.S. Dep't of Justice, 491 U.S. 440 (1989).

their returns, the amendment as drafted may or may not be disadvantageous, depending on when the IRS happens to mail them a notice of deficiency.

If the phrase "with extensions" were to modify the "third year," as petitioner urges, it would help a subset of nonfilers including petitioner. The notice of deficiency in this case, which was mailed on June 19, 2015, would then have been mailed "during the third year (with extensions)" after April 15, 2013, the original due date for filing her 2012 return. She would thus benefit from the three-year lookback period.

But the manner in which Congress drafted the 1997 amendment means that this benefit would be limited in scope. Assume another subset of taxpayers situated similarly to petitioner, except that their notices of deficiency were mailed between April 16 and October 15, 2016. The notices of deficiency would then have been mailed "during the third year (with extensions)" after April 15, 2013, the original due date for filing their 2012 returns. Although the final sentence of section 6512(b)(3) would apply to them, it unfortunately would not help them. That is because it prescribes a fixed three-year lookback period, which would not reach tax payments deemed made on April 15, 2013. See sec. 6513(b). As a result, they would not be entitled to any refunds.

For the 1997 amendment to help both sets of taxpayers, the phrase "with extensions" would need to modify, not only "the third year" (which appear 5 words earlier), but also "3 years" (which appear 27 words later). To have it modify either would violate normal English syntax. To have it modify both would be a linguistic impossibility. See Scripps-Howard Radio v. FCC, 316 U.S. 4, 11 (1942) ("We must be wary against interpolating our notions of policy in the interstices of legislative provisions.").

In short, the 1997 amendment as enacted by Congress does not produce absurd results. Rather, because of what seems inartful drafting, it has one or more gaps in coverage. As has often been said, courts should not attempt to fill statutory gaps in order to fashion judicial remedies. See Lamie v. U.S. Trustee, 540 U.S. 526, 542 (2004) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent."); United States v. Granderson, 511 U.S. 39, 68 (1994) (Kennedy, J., concurring) ("It is beyond our province to rescue Congress from its drafting errors, and to provide what we might think * * * is the preferred result.").

Anyone who has managed to plod thus far through this Opinion will understand that the statutory provisions we are construing are extremely technical and complex. It is possible that the drafters of the 1997 amendment did not think

through all of the ramifications of Congress' decision to "inject filing extensions into the lookback period mechanism," as petitioner puts it. But wittingly or unwittingly Congress placed the words "with extensions" in the text of the statute immediately after "due date." We must give meaning to those words.

The text enacted by Congress makes syntactic sense and has an unambiguous meaning. Construing that text according to its plain meaning does not produce a result "so gross as to shock the general moral or common sense." Harrelson, 282 U.S. at 60. "Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from 'deference to the supremacy of the Legislature.'" Lamie, 540 U.S. at 538 (quoting United States v. Locke, 471 U.S. 84, 95 (1985)).

To reflect the foregoing,

Decision will be entered for respondent.